## CUMNOCK *v.* STATE.

### Opinion delivered June 29, 1908.

1. CONSPIRACY—EVIDENCE.—The existence of a conspiracy composed of two persons cannot be established by evidence of the acts or declarations of one in the absence of the other. (Page 39.)

2. SAME—ACTS OR DECLARATIONS OF CONSPIRATOR.—No evidence of the acts or declarations of an alleged conspirator should be admitted against the accused until the existence of the conspiracy is at least *prima facie* shown. either against them all or against those who are affected by the evidence offered; and of the sufficiency of such *prima facie* case to entitle the prosecutor to go into other proof the judge in his discretion is to determine. (Page 40.)

3. SAME—SUFFICIENCY OF EVIDENCE.—To sustain an indictment of two persons for a conspiracy, it must be proved that both of them were guilty. (Page 40.)

Appeal from Pulaski Circuit Court, First Division; *Robert J. Lea,* Judge; reversed.

*Murphy, Coleman & Lewis, James P. Clarke,* and *T. D. Crawford,* for appellant.

No evidence of acts of an alleged conspirator should be admitted against a co-conspirator until a *prima facie* case is made out. 77 Ark. 444; 11 Ill. App. 188; 31 Gratt. 469. One conspirator can be held criminally liable for such acts only as could reasonably have been foreseen to occur in the execution of the conspiracy agreed upon. 31 So. 280; 96 Ill. 73; 115 Ga. 584. Where some act essential to the crime of conspiracy is in fact done by a detective and not by defendant, the latter's guilt is not made out. 22 Kan. 505; 3 Tex. App. 156; 41 E. C. L. 123; 44 Kan. 618; 20 Tex. App. 375; 53 Cal. 185; 105 Mo. 76. An accessory is not guilty of burglary where the principal, who was a decoy, was not guilty. 27 So. 617; 11 L. R. A. 813. The owner and his agent may wait for a criminal to perpetrate an offense, but they must not aid encourage or solicit him whom they may seek to punish. 160 Ill. 508; 76 Mich. 200; 112 Am. St. 692; 38 Mich. 218; 72 Am. St. 694; 6 Tex. App. 665; 25 L. R. A. 341; 25 Alb. Law Jour. 184.

If one of two alleged conspirators is not guilty, neither is guilty. 5 Mich. 167; 92 Ga. 584; 32 Ark. 226.

*William F. Kirby,* Attorney General, for appellee.

It is sufficient if the whole evidence introduced in the trial, all considered together, shows that a conspiracy actually existed. 105 Cal. 262; 122 Ill. 1; 17 Kan. 298; 60 Fed. 890; 25 Ont. 151; Roscoe's Crim. Ev. 414. The court may assess the punishment where the jury fail to do so. 56 Ark. 1; 61 *Id.* 594; 69 *Id.* 159; 70 *Id.* 272; 73 *Id.* 321; 80 *Id.* 297. Two parties may enter into an agreement to an unlawful act. They are guilty of a conspiracy, even though the act be impossible of accomplishment; for the crime is *the agreeing to an unlawful act.* The acts of Shackleford do not divest the acts of Cumnock and Faucette of their criminality. 105 Mich. 80.

BATTLE, J. The grand jury of Perry County indicted Frank Cumnock and W. C. Faucette as follows:

"The grand jury of Perry County, in the name and by the authority of the State of Arkansas, accuse Frank Cumnock and W. C. Faucette of the crime of conspiracy, committed as follows,

to-wit: The said Frank Cumnock and W. C. Faucette, in the county and State aforesaid, on the 9th day of August, A. D. 1907, unlawfully and corruptly did conspire, agree and confederate together, and each with the other, to commit the crime of bribery by then and there unlawfully and corruptly paying, and procuring to be paid and delivered, to jurors whose names are unknown to the grand jury, and who were then and there petit jurors duly and legally summoned, sworn, qualified, impaneled and acting as petit jurors on the regular petit jury for the August term, 1907, of the Perry County Circuit Court, which court was then and there in session in pursuance to and in accordance with law, one hundred dollars, gold, silver and paper money, of the value of one hundred dollars, as for and by way of a bribe, with the unlawful intent to bias the members of said jury, and to incline the said jurors to be more favorable to the defendant in a cause then and there pending in said Perry Circuit Court, and which cause said circuit court had jurisdiction to, wherein the State of Arkansas was plaintiff and A. T. Gross was defendant, wherein said A. T. Gross was charged with the crime of soliciting a bribe, and being a matter, cause, case and proceeding which might and did come before said court and said petit jury during said term for trial, the said Frank Cumnock and W. C. Faucette then and there well knowing said jurors were jurors aforesaid, against the peace and dignity of the State of Arkansas."

A change of venue was asked and granted from the Perry to the Pulaski Circuit Court.

The defendants were jointly tried and convicted of the crime charged; and their punishment was assessed at a fine of one hundred dollars each "and three months' imprisonment each in the county jail." They moved for a new trial, which was denied, and they appealed.

In the course of their trial and in behalf of the State John D. Shackleford testified. He said he had a conversation with Cumnock, at which Faucette was not present, and testified in relation thereto as follows: "Yes, he (Cumnock) commenced by saying that Mr. Faucette (defendant) had sent him over to see me, and he said that Bill (Faucette) said for him to come over and see me, and see if I could not give them relief, and I told

him I could not afford to get mixed up in it, and he says:
'Gross feels about it that he cannot go to trial up there, and
our people are disposed to blame you for it,' and I says: 'I
have not got any control over my brother. He is up there, and
I cannot control him, and I cannot afford to get mixed up in it.'
And he said: 'If you don't do something, we are going to hold
it in for you next spring in the election; you can relieve the
situation, and you ought to do it.' I says: 'That is unfair to
me. I am not able to control the situation; and if you are going
to fight me because of that, and because I cannot control my
brother, you will have to do it.' And I pleaded with him that he
ought not to hold me responsible for it, and he told me then, if
I would line up and bring some pressure to bear, how they would
line up over there, and said that Bill said they would give me
Argenta solid; that Bill said he would do it, and he could do it, if
I would make my brother lay down on Rhoton."

He testified that he wrote a letter to his brother, a part of
which is as follows:

"Little Rock, Ark., August 8, 1907.

"Dear Jim:—Frank Cumnock has just paid me a visit on
behalf of Faucette *et al.,* requesting me to bring to bear some in-
fluence on you in the interest of Senator Gross. They want you
to put up a job on Rhoton, and as a reward they offered to give
me material assistance in my race for county judge, and as an ar-
gument they say Rhoton is against me," etc. Again he testified:

"About nine o'clock he (Cumnock) came back to the office,
and said that he had had another conversation with Faucette in
which the agreement was reached that something must be done;
that if they could not reach the case one way they must do it an-
other; and the idea was that the proper thing to do was to hang
the jury."

J. M. Shackleford testified, in behalf of the State, as to a
conversation he had with Cumnock, in the absence of Faucette,
in which he spoke of himself and Faucette as "they." He testi-
fied as follows: "In the conversation with me he indicated that
he was up there for the purpose of aiding Mr. Gross; that is
about what he said about it, and then he asked me if I was not
attorney for the State, and if Mr. Rhoton was not depending on
me to pick his jury for him, and I told him I was, and that I was

representing the State, and that he was relying on me; then he said that the thing they wanted was to get me to assist them to put up a job on Rhoton, so as to either acquit Gross or to hang the jury, and said they were willing to spend some money for that purpose; but they wanted me to do it on the basis that they would assist John D. Shackleford in his race in this county. That was the consideration they proposed to give me, of material assistance for him; but that they were willing to do anything that was necessary that it would take to influence the jury; if it took some money they had it, and he asked me what I thought about it, and I told him I could not do anything about it; and then he wanted to know if Mr. Rhoton was relying on me, and would take whoever I told him; and he wanted to know how much money it would take, and said they wanted the jurors fixed so that there would not be one man hanging out against eleven; and I told him I didn't know what amount it would take, but no great amount, and that I supposed it might be arranged for a small amount; that I had some good friends on the jury, and supposed $25 apiece would be enough for them. And he said they would readily give that, and went on to say: 'We will just make it $75,' and further he said, if that would not be enough, they would make it $100. And I said to him: 'All right; I will undertake it.' And he said he didn't have the money himself, and he says: 'Wait here in the room a few minutes, and I will go down and see Faucette and bring the money back.' And I told him that I would wait. After he had been down towards the courthouse for fifteen or twenty minutes, he came back, and said they didn't have that much money with them, but he said he would go to Little Rock, and get the money, and wanted me to go ahead and carry out the arrangements, and he would go down on the afternoon train, and get the money, and bring it back that night, and for me to meet him at Perry that night, and he would deliver the money. And said he wanted me to go ahead and fix the men, and tell Pratt who they were, and I told him I didn't propose to do it that way, that I had some good friends on the jury, and I didn't care to state what jurors they would be, but that I would furnish him a list of eight names, some two of whom would be the men I had fixed, and that I would furnish the list to them so they would have it, and could use it

in picking the jury; and he agreed to that arrangement and went out, and he took the mail hack and left there. That was about what occurred on the morning of the picking of the jury in the afternoon."

The testimony in this case is voluminous. It is not necessary to state more of it than we have for the purposes of this opinion.

The court, over the objection of the defendants, instructed the jury as follows:

"No. 6. You are instructed that the statements of one conspirator made during the existence of the conspiracy are evidence proper to be considered against co-conspirators."

And they asked and the court refused to instruct the jury as follows:

"6. You cannot find the existence of a conspiracy, alleged in the indictment in this case, from anything that Cumnock may have said or done in Faucette's absence and without his knowledge; and things said or done by Cumnock in the absence of Faucette are to be taken as done without his knowledge, in the absence of evidence to the contrary."

And they asked and the court refused to instruct as follows:

"The only evidence that can be relied upon as tending to connect the defendant Faucette with Cumnock or render him liable for Cumnock's acts or statements, or to establish any conspiracy between him and Cumnock, consists in his receipt of the list from Shackleford and his delivery of same to Gross' attorney, Neal; and if these acts, under all the circumstances and evidence in the case, are reasonably susceptible of an innocent interpretation, you should give them such interpretation and return a verdict of not guilty. You cannot rely on statements and acts of Cumnock in Faucette's absence to establish the alleged conspiracy.

And the court modified the last sentence of the instruction, over objections of defendant, as follows:

"You cannot rely alone upon statements and acts of Cumnock in Faucette's absence to establish the alleged conspiracy." And gave the instruction as modified.

It is well settled that the existence of a conspiracy com-

posed of only two persons cannot be established by evidence of the acts or declarations of one in the absence of the other. There must at least be present, of those affected by the acts or declaration, when made, a sufficient number to constitute a conspiracy; and even then it would not be sufficient if denied at the time by those present. *Chapline* v. *State,* 77 Ark. 444, and cases and authorities cited; *Lawson* v. *State,* 32 Ark. 220; *Rowland* v. *State,* 45 Ark. 134; *Gill* v. *State,* 59 Ark. 430.

Although evidence of mere acts or declarations of one conspirator, in the absence of the other, is inadmissible to establish the conspiracy, yet acts or declarations done or made by one conspirator after the conspiracy is formed, in furtherance, aid, or perpetration of the alleged conspiracy, may be shown in evidence against himself and conspirators. As said by Greenleaf, no evidence of the acts or declarations of a conspirator should be admitted against the accused until the fact of conspiracy with them is first shown, "or until at least a *prima facie* case is made out either against them all, or against those who are affected by the evidence proposed to be offered; and, of the sufficiency of such *prima facie* case to entitle the prosecutor to go into other proof, the judge, in his discretion, is to determine." *Chapline* v. *State,* 77 Ark. 444, 450, and authorities cited.

The court erred in giving the modified instruction. It should not have been given, either with or without the modification. The court also erred in refusing to give the other instruction asked for by the defendants, and in giving that objected to by them.

To sustain the indictment, it was necessary to convict both defendants. They were tried together, and proof of the guilt of both was necessary to establish the conspiracy. If either was innocent, there was no conspiracy. 1 Bishop's New Criminal Procedure, § 1018, sub. 5; 51 American Decisions (notes) 84; *State* v. *Jackson,* 24 Am. Rep. 476.

There are other questions in the case which we do not deem it necessary to decide.

Judgment reversed, and cause remanded for a new trial.