## BUNDY v. STATE.

### Opinion delivered June 27, 1910.

1. CONSPIRACY—EVIDENCE.—The existence of a conspiracy alleged to have been composed of two persons cannot be established by evidence of the acts or declarations of one in the absence of the other. (Page 462.)

2. SAME—SUFFICIENCY OF EVIDENCE.—To sustain an indictment of two persons for a conspiracy, it is not sufficient to prove that one of them conspired with a third person. (Page 462.)

Appeal from Prairie Circuit Court, Southern District; *Eugene Lankford,* Judge; reversed.

*J. G. & C. B. Thweatt,* for appellant.

The admission of a co-conspirator is not admissible until the fact of conspiracy is proved *aliunde.* 77 Ark. 444. The evidence failed to show a conspiracy between appellants.

*Hal L. Norwood,* Attorney General, and *W. H. Rector,* Assistant, for appellee.

The indictment was sufficient to put appellants upon notice of what they were expected to answer. Kirby's Dig., § § 2228, 2241, 2242 and 2243; 84 Ark. 477. It was not necessary to prove an unlawful agreement between appellants by direct and positive evidence. 77 Ark. 444.

McCULLOCH, C. J. Appellants, James Bundy and C. S. Bell, who were school directors in a certain common school district in Prairie County, were tried and convicted under an indictment charging them with unlawfully conspiring together to cheat and defraud one Geneva Lucas out of the sum of $20 by exacting and demanding of her said sum of money as a corrupt consideration to be paid to them for her employment as a teacher in the public school of said district. Bundy and Bell and one Brown had been directors of the district, but Brown died about the time or shortly before the time a contract was entered into with Geneva Lucas to teach the school, but after negotiations had been entered into for her employment. The evidence adduced establishes beyond dispute the fact that Bell and Brown had been for several years prior to this time exacting pay from the teachers they employed. They had demanded and received from Geneva Lucas the payment of a portion of her monthly salary the year prior to this time for employing her as teacher, and before Brown died he and Bell promised to again employ her, doubtless with the hope, or upon the understanding, that she was to pay them a part of her salary. There is no proof, however, that Bundy ever participated in any of those unscrupulous and unlawful practices. On the contrary, it affirmatively appears from the State's evidence that Bundy had nothing to do with those transactions.

Geneva Lucas testified that she applied to Bell for the principalship of the school, and that the latter told her she could have the place if she would give him $20, and that he had been offered that by another person. She said she refused to give him $20, and that he then offered to give her a position as assistant teacher, and demanded $10 for that position. They gave her the position, and she taught one week, but was ordered by Bell to stop when she declined to pay the amount which he demanded. The only way in which she connects Bundy with the transaction is that Bell gave her a note to Bundy, saying that he would find her all right, because she had taught there before, and that Bundy agreed to employ her. Speaking of the interview with Bundy, she made this statement: "He told me that he had heard that Bell and Brown had been charging $5 for the school, and asked me if I had paid it, and I told him that I did, and that I would quit the school before I would pay

it any more, and he told me to go ahead and teach." Other witnesses testified about paying Bell and Brown for employment as teachers.

The only evidence which tends to show a knowledge on the part of Bundy as to the unlawful practices of Bell and Brown was the above statement of Geneva Lucas and the testimony of her husband to the effect that Bundy said this to him: "We (meaning himself and Bell) met the other night, and he talked like she (meaning Geneva Lucas) wilted on her obligation, and I don't know anything about it;" also the statement of another witness, who had paid money to Bell and Brown for employment, that some time afterwards Bundy told him that Bell and Brown had made a contract with Geneva Lucas for $15 a month. Now, the most that this testimony established is that at some time Bundy acquired the knowledge that his co-directors, Bell and Brown, were selling positions as teachers and exacting a part of the teachers' salaries. It does not show that he knew these things at the time they were practiced, or that he ever received this information at or before the time of this transaction with Geneva Lucas. When he made these statements to witnesses, it seems to have become common knowledge that Bell and Brown were doing these things, and it was only a short time afterwards that the matter was taken up by the prosecuting attorney and referred to the grand jury.

We said in the case of *Chapline* v. *State,* 77 Ark. 444, that, "to establish a conspiracy, it is not necessary to prove an unlawful agreement by direct and positive evidence; if it be proved that two or more persons pursued by their acts the same unlawful object, each doing a part, so that their acts, though apparently independent, were in fact connected, a conspiracy may be inferred, though no actual meeting among them to concert means is proved."

The weakness, however, of the State's case here is that there is no evidence whatever that Bundy ever participated in the plan to exact money from the teachers, or that he had ever done so or sought to do so. All of the State's evidence tends to the contrary. Proof is abundant that Bell and Brown both indulged in these practices; but the existence of the alleged conspiracy between Bundy and Bell can not be established solely by evidence of the acts or declarations of the latter in the ab-

sence of the former. *Cumnock v. State*, 87 Ark. 34. The evidence being insufficient to establish a conspiracy, neither Bell nor Bundy can be convicted of that offense, even though there is evidence sufficient to establish those unlawful practices on the part of Bell alone, or Bell and Brown. The indictment charges a conspiracy between Bundy and Bell, and in order to convict it devolved upon the State to prove that particular offense. It was, of course, not sufficient under that indictment to show a conspiracy between Bell and Brown.

The sufficiency of the indictment was questioned on demurrer, but we are of the opinion that the indictment charged a public offense with sufficient certainty to put the defendants on their defense; but, the evidence being insufficient to support the verdict, the judgment is reversed, and the cause is remanded for new trial.