## GORDON v. MCLEARN.

### Opinion delivered April 24, 1916.

1. MALICIOUS PROSECUTION—CAUSING ARREST.—Defendant held liable in damages for causing plaintiffs' arrest, having falsely charged plaintiffs with attempting to defeat defendant's lien upon certain cotton in his possession.

2. MALICIOUS PROSECUTION—CIVIL ACTION—INSTIGATION OF PROSECUTION—MALICE.—One who advises and procures a third person to institute a malicious prosecution, may be held liable in damages therefor, and one who aids and abets the prosecutor in such action is liable equally with the latter for damages therefor, nor will the fact that the person who, at the defendant's instigation, made the complaint had probable cause for believing it to be well founded, avail the defendant as a defense, where he acted without probable cause.

3. MALICIOUS PROSECUTION—PUNITIVE DAMAGES.—Punitive damages may be assessed against the defendant, when he caused the plaintiff to be arrested, having acted wilfully, in a wanton and oppressive manner, and in conscious disregard of his civil obligation and of plaintiff's rights.

4. MALICIOUS PROSECUTION—PUNITIVE DAMAGES—AMOUNT.—Puntive damages may not be assessed against the defendant in an action for

malicious prosecution, unless some compensatory damages were also assessed, although the amount of punitive damages awarded may largely exceed the award of compensatory damages; and in such a case where $25 compensatory damages were assessed, a verdict for $1,000 punitive damages will be reduced to $200.

Appeal from Greene Circuit Court; *W. J. Driver,* Judge; modified and affirmed.

*Spence & Dudley,* for appellant.

1. To sustain the judgments it was necessary to find against both defendants. Since Malin was discharged it is evident there was no conspiracy. The acquittal of one co-conspirator operates as a discharge of the other, 117 Ark. 384; 87 Ark. 34.

2. There is no evidence to sustain the allegation that there was a conspiracy and the jury so found. The court erred in refusing appellant's prayer for a directed verdict. 20 Ark. 225; Words & Phrases, vol. 2, p. 1454.

3. The court erred in its charge to the jury. Where a person does no more than to give information by affidavit to an official, relative to a matter over which he had jurisdiction, he is not liable for trespass for false imprisonment for acts done under a warrant which the officer issues on said charge. 19 Cyc. 330; 95 Ark. 227. Appellant did not make the affidavit. The court should have given appellant's instruction No. 4. He had a landlord's lien for rent. 103 Ark. 91. Appellant's instruction No. 5 should also have been given. 69 Ark. 441; 107 *Id.* 74. Malice and want of probable cause must be shown. 33 Ark. 321; 101 *Id.* 37.

4. Where one lays all the facts before a public prosecutor, or counsel and acts upon his advice, this is conclusive of probable cause. 100 Ark. 316; 107 *Id.* 74.

5. A verdict should have been directed for defendant. The verdict is the result of passion and prejudice and the judgment should be reversed.

*S. R. Simpson,* for appellees.

1. Appellant was actuated by malice. He had had a fight with appellee, and the rent was paid. 90 Ark. 463.

2. The finding for Malin does not release appellant. There is no error in the instructions.

3. Nominal actual damages will carry punitive damages. 104 Ark. 92; Ann. Cases, 1913, A. 351; 37 L. R. A. (N. S.) 533; 247 Mo. 222; 251 *Id.* 431; 176 Mo. App. 239; 35 Ark. 494; 59 *Id.* 224. The amount of exemplary damages is left to the sound judgment and discretion of the jury. 84 Ark. 250.. One who urges a malicious prosecution is liable. 3 L. R. A. (N. S.) 929; 97 Ark. 24; Ann. Cas. 1914, B. 636.

4. The verdict is not excessive. 58 Ark. 239; 101 *Id.* 90; 101 *Id.* 120. The instructions were the law.

SMITH, J. Appellees recovered damages, both compensatory and punitive, against appellant in a suit for malicious prosecution. Appellees brought separate suits against appellant and R. B. Malin, but by consent the causes were consolidated and tried together and a verdict rendered in each case against appellant Gordon for $25 compensatory damages and $1,000 punitive damages, but a verdict was rendered in each case in favor of Malin. It was alleged in each of the complaints that Malin and Gordon conspired together to cause the arrest and prosecution of appellees upon the false charge of having removed and disposed of two bales of cotton, upon which there existed a landlord's lien in favor of Gordon, with the intention of defeating said lien. Upon the verdict being returned in favor of Malin appellant insisted that judgment be pronounced in his favor notwithstanding the verdict, upon the ground that he alone could not be guilty of a conspiracy, and inasmuch as a verdict was rendered in Malin's favor he is also discharged from liability.

The evidence is conflicting, but the verdict of the jury has resolved the conflicts in appellees' favor and, when so resolved, the facts may be stated as follows: Appellee McLearn was a minor and made a crop of six acres on land which his brothers Ray and Raymond had rented from appellant. Two other brothers had rented portions of appellant's land for the same year, but they

had made a final settlement of their accounts with appellant and had moved off the place before the cotton in question was sold. Appellee Arthur was also a minor and was employed by McLearn at the time of the sale of the cotton which resulted in their arrest. All of the McLearn brothers except appellee had rented lands from appellant and had agreed to pay the sum of $6.50 per acre money rent. Their tenancy had expired and all of the McLearns were leaving the farm to take charge of another, and friction existed between them and appellant. Under directions from appellant the McLearns had delivered their cotton at Marmaduke to a Mr. Waxmon, who receipted for the cotton received and credited the same to appellant's account. There were also some credits for wood which the McLearns had cut for appellant, and as a result of these credits there was no rent due appellant on the land on which the cotton in controversy was produced. Upon the contrary, it was shown that appellant was slightly indebted to the McLearns, and paid a small balance when a settlement was finally had. Much evidence was offered to the effect that the McLearns pressed appellant for a settlement, but were unable to procure one, as they were desirous of vacating appellant's farm, and of taking possession of the other one which they had rented. Appellee McLearn started to haul a load of hay from the place when appellant forbade him doing so, and a fight ensued in which appellant was worsted, and he thereafter procured the arrest of appellee McLearn for assault and battery.

Appellees hauled the two bales of cotton to Halliday on December 23, where they sold it to Malin for a cent a pound more than they had been able to procure from Waxmon at Marmaduke. Before purchasing the cotton Malin asked appellees about the existence of liens, but was told there were none, and he bought the cotton under the impression that it belonged to Arthur, and the check given in payment therefor was made payable to Arthur's order. There was evidence also of the fact that after loading the cotton appellees changed wagons, of which

fact Malin was apprised after his purchase, and this tended to confirm his suspicions, after they had been aroused by appellant's statements. In appellees' behalf, however, it was shown that the change was made on account of the condition of the road. When appellant learned of this sale he represented to Malin that his rent was not paid and that there was a balance of $80 or $85 due him and that the cotton was subject to his lien, and he told Malin of the circumstances under which the cotton had been removed and that he had forbidden the removal of any cotton, or any product, until his rent was paid. Malin was made to believe from these statements that he would probably lose the money he had paid for the cotton, and he and appellant consulted about the kind of charge to prefer against appellees. Before taking any action, however, Malin conferred with the deputy prosecuting attorney and related to that officer all the facts of which he had knowledge and also what appellant had said, and he was advised by that officer to have appellees arrested. Appellant and Malin went together to the justice of the peace who issued the warrant of arrest, and both were sworn to the statement of fact upon which the warrant of arrest was issued, although only Malin signed it. Thereafter appellees were both arrested, and McLearn was in custody for five hours, during which time he was carried around as a prisoner in the town near which he lived while he was attempting to procure bondsmen to secure his release. He finally made the required bond and was discharged. Arthur was not so fortunate and failing to make his bond he was confined in jail and kept there for three days. Before the trial the McLearns told Malin that they owed appellant nothing, and this statement was repeated to appellant but was denounced by him as being false, but Malin became convinced their statement was true, and so advised the prosecuting attorney, who ordered the dismissal of the criminal charge against appellees, and thus the prosecution was ended.

Separate answers were filed by Malin and by appellant, and both denied the existence of any conspiracy to

prosecute appellees falsely. Malin defended on the grounds of absence of malice, the advice of counsel, which he had acted upon in good faith, and the existence of probable cause for his action. In support of his defense he testified that appellant told him the cotton was his, that he had a rent note signed by all the McLearns when, in fact, he had no note, and that the rent was not paid, and he demanded the possession of the cotton and said, "These boys have sold that cotton and more than likely he (McLearn) is fixing to get away." Appellant and Malin went together to the justice of the peace and together fixed up the affidavit, whereupon Malin said to the justice of the peace that appellant was the man to make the affidavit and stated to appellant at the time, "I don't know anything about it only what you say," but appellant said, "No, you sign it," and the officer said, "You can both sign it," but Malin said, "He is the man who knows," and the officer said, "You can both swear to it," and this was done, although Malin alone signed his name to the affidavit.

Appellant's defense is and was that he had probable cause to have appellees arrested, although he denies having done so. Under the allegations of his answer appellees are guilty of the crime charged in the warrant of arrest which was issued by the justice of the peace, and he testified that the action taken by him was done to protect his lien as landlord.

(1) It is insisted that inasmuch as there had been no settlement, appellees had no right to remove any portion of the crop from the premises. If it be conceded that this is true, and that appellant had the right to attach the cotton, it still does not follow that he had the right to have appellees arrested. He would have had no right to procure appellees' arrest unless he had reasonable groud for believing that they were removing the cotton from the premises to defeat him in the collection of his debt. Under the proof the jury could have found that appellant, not only knew there was no rent due him, but also that he knew there was being held on

the place enough cotton to pay any balance claimed by him. However, this question was passed upon by the jury. In instruction numbered six the court told the jury that, if, at the time of the removal of the cotton from the farm, or at the time of its sale to Malin, any part of the rent on the land on which said cotton was produced was unpaid, and that the cotton was removed and sold without the consent of Gordon, to return a verdict for both defendants. A more favorable instruction could not have been asked.

Appellant was cross-examined at length about his failure to consent to or to order the discharge of appellees prior to the time their discharge was ordered by the deputy prosecuting attorney upon Malin's direction, and about the state of his feelings towards appellees and particularly towards McLearn, and the jury might have found that his answers but ill-concealed the express malice which other facts and circumstances tended to establish. Appellant testified at the trial that, at the time of the removal and sale of the cotton, there was due him a balance of $80 or $85 on account of the rent, and had the jury credited this statement that this sum, or any other sum, was then due him, the verdict, under instruction numbered six, must necessarily have been in his favor.

(2) We think appellant's contention that the verdict of the jury in Malin's favor requires his own discharge is not well taken. It is true, of course, and has been so decided by this court, that, upon the indictment of two persons only for criminal conspiracy, the acquittal of one is an acquittal of the other. *State* v. *Smith,* 117 Ark. 384; *Cumnock* v. *State,* 87 Ark. 34.

But this is not a criminal prosecution against appellant and Malin. The complaint did not charge that they conspired together to wrongfully procure appellees' prosecution, and proof of concert of action was necessary to support a finding of joint liability for the tort committed. But the individual liability did not depend upon the proof of the existence of a conspiracy. At least two persons must be guilty to constitute an unlawful conspiracy,

whereas one person alone may be guilty of conduct which furnishes the foundation for an action for malicious prosecution, even though such person induces another to set the machinery of the law in motion. The court submitted these questions to the jury under appropriate instructions, and the jury was told the circumstances under which one or the other or both of the defendants might be held liable. Here the jury had evidence to support its finding that appellant alone was liable for this prosecution, and their verdict in Malin's favor shows that they so found. It is true Malin signed the affidavit and appellant did not do so. But this fact does not necessarily make one liable, nor does it necessarily excuse the other. Malin may have been excused by the jury because of a finding in his favor that he had probable cause, or was not prompted by malice, or was justified in acting upon the advice of counsel; but the proof did not also require a finding in appellant's favor because Malin was exonerated from blame, nor because appellant did not actually make the affidavit. The rule in such cases is stated in 19 A. & E. Enc. of Law (2nd ed.) p. 692, title "Malicious prosecution," as follows:

"One who advises and procures a third person to institute a malicious prosecution may be held liable in damages therefor, and one who aided and abetted the prosecutor in such action is liable equally with the latter for damages therefor. Nor will the fact that the person who, at the defendant's instigation, made the complaint had probable cause for believing it to be well founded avail the defendant as a defense where he acted without probable cause."

The same authority also states the law to be:

"But it is not necessary to prove that the defendant was the originator of the proceedings complained of. If he participated voluntarily in the malicious prosecution, and it was carried on with his countenance and approbation, he will be liable."

But we are not called upon to approve the law thus broadly stated to uphold the findings of liability against appellant, for the proof here is that he, not only countenanced and gave approbation to the prosecution, but, that he, in fact instigated it. See cases cited in notes to the text quoted, and see also 26 Cyc. p. 17, and cases there cited.

(3) The majority of the court is of the opinion that the evidence supports the finding that appellant's wrongful act was wilfully done, in a wanton and oppressive manner and in conscious disregard of his civil obligations and of appellees' rights and, therefore, punitive damages were properly assessed. Newell on Malicious Prosecution, p. 524.

(4) But we are also of the opinion that excessive damages on this account were allowed in view of all the circumstances shown in the case and especially in view of the comparatively normal sum allowed as compensatory damages. No punitive damages could be assessed unless some compensatory damages were also assessed, although, of course, punitive damages might largely exceed the compensatory damages; but the disparity here is too great under the circumstances of this case, and the judgment for punitive damages will accordingly be reduced to the sum of $200 in each case and as thus reduced the judgment will be affirmed.