9 So.2d 747

**DE ARMOND v. SAUNDERS et al.**

6 Div. 77.

Supreme Court of Alabama.

June 25, 1942.

Rehearing Denied Oct. 8, 1942.

264

William Dowdell Denson, of Birmingham, for appellant.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellees.

LIVINGSTON, Justice.

Appellant declared in four counts (1) malicious prosecution, (2) for false imprisonment, (3) for an assault and battery, and (4) for slander. Defendants pleaded the general issue in short by consent. The general charge withdrew count 3 from the jury; the other three counts being submitted to it. All of the defendants, except appellee Magnus Grocery Company, Inc., a corporation, had the general charge as to all the counts. There was a verdict and judgment for the defendant. No point is made as to charging out any defendant except M. M. Magnus.

As the cause must be reversed and remanded, we will not treat those assignments of error which we think unlikely to arise on another trial.

The salient facts of the case are briefly as follows: The testimony showed that the plaintiff had been charged with the theft of certain articles in what we might call a self-serving grocery store on 21st Street between First and Second Avenues in the city of Birmingham, and that for this offense she had been tried first in the Police Court of the city of Birmingham, where she was convicted, from which conviction she appealed to the circuit court and was there acquitted. At the time the plaintiff entered this store, J. C. Forceman, who was then the manager, was standing behind a partition which separated the front of the building from the rear, and was looking through a hole in the partition. His testimony was to the effect that he saw plaintiff take from the shelves of this store several cans of milk and a can of cocoa, place them in a basket which she had picked up on entering the store and then move to another part of the store and place the cans in her bosom; that he also saw her take from the ice box some butter in her hand, and that he was at the cashier's stand when she left the store and noted what she paid for and knew she had some articles for which she did not pay; that he thereupon followed her out onto the sidewalk and asked her back into the store and told her that she had some articles for which she had not paid, and she started taking these items out of her bosom. Whereupon this store manager called a Mr. Battle, who was a customer in the store, and told him that he would like for him to see what the plaintiff was taking out of her bosom. Mr. Forceman testified that he also told her at this time that she had been "fooling" with some butter and that she had a pound of butter, but no butter was discovered on her. Mr. Forceman called an officer who arrested plaintiff and took her to police headquarters where she was searched.

It is further shown that shortly after the plaintiff had been arrested and taken to police headquarters Mr. Magnus was at the store, and testified that he then heard about the incident and heard that plaintiff had claimed to have purchased these articles from the Atlantic and Pacific store, a store owned by an entirely different company, located on Second Avenue between 21st and 22nd Streets; that he thereupon examined the cans of milk on the shelf of the Magnus Grocery Company Store and the cans which the plaintiff had been accused of stealing, and found them marked with a serial or vat number of V-248, and that he immediately went to the other store where she claimed to have purchased these articles and examined the cans on the shelf in that store and found no cans bearing this serial or vat number. The manager of the Atlantic and Pacific store also testified in this case to the general effect that he remembered Mr. Magnus coming in and making this investigation and although he did not remember the serial or vat number involved he did remember that he assisted Mr. Magnus in making the investigation and that they did not find any cans bearing the number involved in that search.

Plaintiff denied taking these articles without paying for them and in explanation of her denial stated that she had

266

bought them from another store (the Atlantic and Pacific) and had carried them to a dry goods store where the sack broke and that she went into the dry goods store and deposited these various articles in her bosom.

The trial court refused to give to the jury the following charge at the written request of the plaintiff: "The court charges the jury that in determining whether the defendant's servants or agents had probable cause for believing the plaintiff committed the offense charged they may consider not only the facts known to said servants or agents but also those facts which would have been disclosed to said servants or agents upon a reasonable investigation as to where the plaintiff obtained said articles which said servants or agents charged the plaintiff with stealing."

 The charge was properly refused. The arrest had been made when Mr. Forceman was informed by plaintiff as to where she purchased the goods. The charge has misleading tendencies under the uncontradicted facts of this case.

Assignment of error numbered twenty-five is based on the giving of the following written charge for the defendant M. M. Magnus: "I charge you, gentlemen of the jury, that if you believe the evidence in this case you cannot find a verdict against the defendant M. M. Magnus."

Mr. Magnus testified as follows:

"I am connected with the Magnus Grocery Company. I own practically all of the Magnus Grocery Company. The store that is described here is located at 113 and 115 North Twenty-first Street. We own the Magnus Grocery, we have a lease on the building and operate that store. * * * I am one of the officers of the Magnus Grocery Company, a corporation, it is practically my business. * * *

"I remember the occasion that Mrs. DeArmond was arrested. I was not present at the time she was arrested. I happened in the store about twenty minutes after she had been taken out. At that time Mr. Forceman had returned from the police station, he was in the store when I was there. After that time I went around to the A. & P. Store. I went around there probably ten minutes after I got into the store. That store was around on Second Avenue, between Twenty-first and Twenty-Second Street. I examined all the Dime Brand milk, I did not examine all of it. I did not find the brand V–248, that is a serial number. Before I went to the A. & P. Store I examined the Dime Brand milk on my own shelves, and saw what kind of milk I had in my own store, the store in which the lady was arrested. The major portion of it for that V–248—I think there was. The Dime Brand milk is shipped from time to time in serial numbers. I say I went to the shelf in my store where I had Dime Brand milk and I looked at the numbers on that milk, the serial numbers. I expect I had about a case and a half, between sixty and seventy cans, forty-eight cans in a case. Yes I looked at each and every one of those cans. I do not know how many shipments of Dime Brand V–248 were shipped into Birmingham on the occasion those were shipped. I do not know how many merchants bought that kind of milk on that occasion and on the same day I had my shipment. Practically all the merchants in Birmingham deal in that particular kind of milk. The A. & P. deal in it. I testified in this case in Judge John P. McCoy's court in the criminal division of the court. * * * Yes, I believe I was examined before Judge Henry J. Martin, the presiding judge of the Recorder's Court of the city of Birmingham on the 13th day of January, 1927. I say that on the 18th day of December, 1926, in the city of Birmingham, Alabama, I went to the A. & P. store in twenty minutes after the arrest of Mrs. DeArmond, to see what the serial number was, about that time, yes, sir, approximately that time."

The manager of the A. and P. store corroborated substantially the testimony of Mr. Magnus. It further appears that Mr. Magnus testified at the trial of plaintiff, both in the recorder's court and in the circuit court; but it is not shown whether or not this testimony was given in response to a subpoena.

In the case of Southern Express Co. v. Couch, 133 Ala. 285, 288, 289, 32 So. 167, 168, this court said:

"An actionable wrong involves liability to one by whom its commission has been incited or encouraged, as well as to its immediate perpetrators. Bish.Cont. §§ 523, 524. This general principle applies to cases of malicious prosecution. Porter v. Martyn, Tex.Civ.App., 32 S.W. 731; 19 Am. & Eng.Enc.Law, 692.

"It was possible for the defendant express company to have instigated or encouraged the prosecution here complained

of without ostensibly appearing therein, and for it to have done so through an agent lacking authority to actually install the defendant as the prosecutor. Its special agent, Burns, though disclaiming authority to order an arrest and prosecute in its behalf, testified his duties 'required him, whenever a theft or robbery had been committed, to investigate the matter, and, if possible, find out who the robbers were, and bring them to justice.' Inquiries and statements addressed by him to Wilson, if made, as some evidence tends to show, after the plaintiff had been arrested and before his discharge, concerning plaintiff's movements and expenditures of money recently after the robbery, were proper to be proven as indicating that defendant employed efforts to obtain evidence for use in the pending prosecution."

The rule is thus stated in 19 Amer. & Eng.Ency.Law (2d) 692: "One who advises and procures a third person to institute a malicious prosecution may be held liable in damages therefor, and one who aided and abetted the prosecutor in such action is liable equally with the latter for damages therefor. Nor will the fact that the person who, at the defendant's instigation, made the complaint had probable cause for believing it to be well founded avail the defendant as a defense where he acted without probable cause."

Although the evidence shows that Magnus did not commence the prosecution of plaintiff, there is testimony from which the jury may draw the inference that he aided or abetted, or participated in the prosecution after it was commenced. Southern Express Co. v. Couch, supra; Gordon v. McLearn, 123 Ark. 496, 185 S.W. 803, Ann. Cas.1918A, 482; Virtue v. Creamery Package Mfg. Co., 123 Minn. 17, 142 N.W. 930, 1136, L.R.A.1915B, 1179; Stansbury v. Fogle, 37 Md. 369–384, 18 R.C.L. 18–19, par. 8; 38 Corpus Juris 476, section 147; 34 Amer.Jur. 755, sec. 83. The court erred in giving the general charge in his behalf.

Assignment of error number twenty-seven is predicated on the giving of the following written charge for defendant: "The court charges the jury that they cannot find for the plaintiff in this case unless they find that plaintiff was arrested and prosecuted both maliciously and without probable cause."

■■ This charge ignores the count for false imprisonment. To maintain an action for false imprisonment, it is not es-

sential that the arrest and imprisonment should have been obtained by malice and without probable cause. Rich v. McInerny, 103 Ala. 345, 15 So. 663, 49 Am.St.Rep. 32; Code of 1923, section 9531, form 19, now section 223, form 19, Title 7, Code of 1940. The count for false imprisonment was in the form prescribed by the named Code sections.

Obviously, the charge placed the burden on plaintiff to prove that the false imprisonment was both malicious and without probable cause. The law does not place such a burden on the plaintiff, and she did not voluntarily assume it by her pleading. Rich v. McInerny, supra.

■ For like reason the court erred in giving to the jury charges 3, 6 and 16. Charge 8–A is misleading and should have been refused.

For the errors pointed out, the cause must be reversed.

THOMAS, J., concurs in the foregoing opinion.

■ GARDNER, C. J., BOULDIN, BROWN, and FOSTER, JJ., are of the opinion, and hold, that the defendant M. M. Magnus was due the general charge, and the trial court did not commit error to reverse in giving it. As to defendant Magnus the judgment is affirmed.

All the Justices concur in the reversal, except KNIGHT, J., not sitting.

Affirmed in part, and in part reversed and remanded.