LICHTER et ux. v. FULCHER et al., No. 1.—125 S. W. (2d) 501.

Eastern Section. Dec. 17, 1938.

Petition for Certiorari Denied by Supreme Court, March 4, 1939.

Harry A. Luck, Cornelius, McKinney & Gilbert, and Carmack Cochran, all of Nashville, for appellants.

Seay, Stockell, Edwards & Barksdale, of Nashville, for appellees.

AILOR, J. This is a suit by Jacob Lichter and wife, Jennie L. Lichter, partners and residents of Cincinnati, Ohio, doing business under the firm name of Southern Fireproofing Company, against Robert D. Fulcher and other officers and members of the Nashville Mason Contractors Association and the Nashville Mason Contractors Association, a corporation organized and existing under the laws of the State of Tennessee. The bill charged defendants with a conspiracy to interfere with the performance of certain contracts by complainants at Nashville, Tennessee, by means of inciting and procuring union bricklayers to refuse to work for complainants. A decree was entered in favor of complainants upon the hearing of the cause for the sum of $416.17 as compensatory damages and for the sum of $250 punitive damages. Both complainants and defendants were dissatisfied with the results of the hearing and the decree entered and prayed and perfected appeals to this court, and have assigned errors herein.

The Chancellor prepared an exhaustive finding of facts, the substance of which we state, as follows: That complainants were brick and tile contractors of Cincinnati, Ohio, and that defendants, Robert D. Fulcher, Paul Poyner, W. Bush Sneed, and W. S. Crandall are also brick and tile contractors and competitors of com-

plainants at Nashville, Tenn., That the Nashville Mason Contractors Association holds a public welfare charter, Robert D. Fulcher being its President, R. L. Farrar its Secretary, and that W. Bush Sneed, Paul Poyner and W. S. Crandall had been representing it on a joint arbitration committee along with Carl Vester, German Vaughan, James D. Dorris from the Local Union No. 4 of Union Brick Masons of Nashville. He further found that complainants were the successful bidder on the brick and tile work for the construction of certain repairs on the Post Office and Customs House in Nashville, and also the successful bidder on the brick and tile work for the construction of the new Supreme Court Building at Nashville.

The Chancellor further found that the contract under which complainants became the successful bidder on said projects required that union bricklayers only be used, and that the only source of union labor available to brick and tile contractors was controlled by the local union at Nashville, being said local union No. 4. That the officers and committee of said Labor Union prepared and approved a working agreement between said Labor Union and the defendant, Nashville Mason Contractors Association, which agreement was signed by W. Bush Sneed, Chairman, W. S. Crandall and Paul Poyner, on behalf of the Nashville Mason Contractors Association, and by James D. Dorris, Secretary, C. N. Vester and D. G. Vaughan on behalf of said Labor Union and forwarded to the President of the International Labor Union for approval. This agreement provided that no brick mason member of Local No. 4 should work for any other firm or corporation whatsoever other than the signers of the agreement who pledged themselves to abide thereby, and with the rules of the Nashville Contractors Association. The agreement further provided that every contractor erecting masonry should file with the Secretary of the Nashville Mason Contractors Association a copy of his bid, and in event of violation of the agreement or of the rules of the Nashville Mason Contractors Association the joint arbitration Committee of the Nashville Mason Contractors Association and Local Union No. 4 was given the right to deny to brick mason members of Local Union No. 4 privilege to work on such job, and to remove the name of the offender from the list of fair contractors. As above stated this agreement was returned to the local union without the approval of the International Labor Union with the explanation that an attempt to enforce same would result in a suit against the local union.

The Chancellor further found that the features in the proposed agreement objectionable to the representative of the International Union were later eliminated and the agreement as actually executed related only to working conditions, wages and hours, etc.,

of the Labor Union. At the same time a code of fair trade practice for the Nashville Mason Contractors Association was adopted, providing for the filing of a copy of all bids with the Secretary of the Association not later than 4:00 P. M., the day before bids were to be awarded. But these rules did not purport to be binding on anyone not members of the Nashville Mason Contractors Association, and the discipline provided was for suspension or expulsion from membership in the association.

The Chancellor further found that complainants submitted a copy of their bid on the old Post Office and Customs House job to the defendant, R. L. Farrar, who had been acting as bid depository under the N. R. A., which had at that time been declared unconstitutional by the U. S. Supreme Court. Mr. Farrar would not accept the copy of the bid, and returned it to complainants. The Government thereafter revised its plans and other bids were required on this job, and complainants again became the successful bidder on the brick and tile work. It also became the successful bidder on the brick and tile work for the new Court Building in Nashville, Tennessee, on or about March 24th, 1936. In order to avoid any controversy with Nashville contractors, complainants sent a copy of their bid for the Supreme Court job to be delivered at 3 P. M., March 24th, 1936, to the same R. L. Farrar, then secretary of the Nashville Mason Contractors Association, but delivery of this was refused by Mr. Farrar on the claim that it came too late.

The Chancellor further found that, on or about March 27th, 1936, Robert D. Fulcher, President of the Nashville Mason Contractors Association, wrote a letter to Foster and Creighton, general contractors on both the Post Office and the Supreme Court jobs, sending a copy of same to Local Union No. 4, as follows:

"This is to notify you that Southern Fireproofing Company of Cincinnati, Ohio, violated the Bidding Rules of the Mason Contractors Association of Nashville on the U. S. Custom House building at Nashville, Tennessee." That following the sending of this letter there was a meeting of the joint arbitration committee of the Nashville Mason Contractors Association, consisting of W. B. Sneed, Chairman, Paul Poyner, and W. Scott Crandall, for the contractors, and Carl Vester, German Vaughan and James Dorris for the bricklayers, at which time representatives of the Mason Contractors Association notified the brick layer representatives that complainant company had not complied with the rules of the Nashville Mason Contractors Association in bidding on the Customs House and the Supreme Court Building. That the object of sending copy of the letter to the Labor Union was to induce members of said union to refuse to work for complainant on the two jobs in question, and that W. Bush Sneed, Paul Poyner and W. Scott Crandall, constituting the arbitration committee of the

Nashville Mason Contractors Association, intended to accomplish the same purpose with regard to said contracts, when then notified the brick layer's Union No. 4 of the failure of complainants to comply with said bidding rules. That the said defendants, Robert D. Fulcher, W. Bush Sneed, Paul Poyner, W. Scott Crandall and R. L. Farrar, and the Nashville Contractors Association conspired together to intermeddle with and interfere with complainant in the performance of contracts which complainants had obtained in Nashville.

As a result of the activity of defendants as outlined herein the Local Labor Union at Nashville refused to furnish labor for the work of remodeling the Post Office and Customs House and doing the brick and tile work on the new Supreme Court Building at Nashville. Faced with this situation Foster and Creighton, General Contractors, found it necessary to take over the execution of the contract it had given complainants for doing the brick and tile work on the Pos Office improvements. After much effort and the expenditure of large sums of money complainants finally convinced representatives of the Local Union that it had violated no rule of conduct for which it should be deprived of the services of Union Labor for carrying on the work on the new Supreme Court Building, and labor for this job was furnished by the local union.

The Chancellor further found that Local Union No. 4 made no objection to furnish labor to Foster and Creighton for doing the work on the Post Office job, and that it would have furnished labor to complainants, except for the action of defendants; that defendants, Robert D. Fulcher, W. Bush Sneed, W. Scott Crandall, Paul Poyner, R. L. Farrar, and the Nashville Mason Contractors Association were informed that loss and damage would result from their course of conduct, but that they declined to recede from their position. The Chancellor, therefore, concluded that the actions of the defendants were wrongful and without justification in law; that complainants having no adequate remedy at law were entitled to the benefit of injunctive relief. Defendants, Robert D. Fulcher, Paul Poyner, W. Bush Sneed, W. Scott Crandall, R. L. Farrar and the Nashville Mason Contractors Association, and their agents and representatives were, accordingly, enjoined from intermeddling with or obstructing the performance by complainants of their contracts by lodging complaints of alleged violations of bidding rules, practices or ethics of the Nashville Mason Contractors Association with Local Union No. 4, or any other Labor Union with the intent and purpose of embarrassing complainants in the performance of said contract or interfering with their obtaining union labor thereon.

The cause was referred to the Master to ascertain and report any damages to which complainants were entitled as a result of the

conduct of defendants obstructing the performance of complainant's contracts.

██ The findings of the Chancellor are well supported by the proof in the record and we concur with his findings and conclusions as to the object of defendants. In this connection it should be observed that there was no issue between complainants and organized labor. Complainants employed only Union Labor and complied with the requirements as to working hours, scale of wages to be paid and other regulations prescribed by the Union. It appears that the relations between organized labor and the Nashville Mason Contractors Association were also very satisfactory, and that there was close cooperation between the local Masons Union and the Nashville Mason Contractors Association. We think it must be concluded from the facts made to appear in this case that the Mason Contractors Association of Nashville sought to control the supply of union mason labor to the extent of rendering it virtually impossible for outside contractors to get local union labor, and in this way to eliminate outside competition in connection with local contracts for brick and tile work. It is obvious that this would have resulted in a monopoly for the local contractors in this field of enterprise to the exclusion of outside competition. It is true that the formal agreement which would have given the Nashville Masons Contractors Association virtual control over the allotment of Union Labor for work at Nashville was rejected on submission to the International Union organization, but it appears that the object of this formal agreement was sought to be attained in disregard of this rejection and in the face of the formal elimination of the objectionable features from the contract as agreed upon. We think the combined effect of the acts of defendants was an unlawful interference with the freedom to contract by complainant and to carry its contracts into execution, for which they are liable in damages to the extent that same may be shown to have naturally resulted from said wrongful acts. With these observations we now notice assignment of errors on behalf of defendants which we deem material at this time.

██ The first four errors assigned deal with the failure of the Chancellor to find certain facts. These alleged omissions are not material at this time; they constitute details too minute to call for special treatment. It is no incumbent on a Chancellor or this court to find all facts shown by proof, it is only necessary to find the material facts. The Chancellor found that defendants unlawfully conspired to prevent complainants from obtaining the necessary union labor for completion of the contracts entered into by complainants, and he cited a connected series of events supporting this conclusion. A written finding of facts by Chancellors or by this court does not contemplate a complete résumé of all of the evi-

dence introduced upon the trial of the cause, but only the material facts established by the preponderance of the evidence. For the reasons here stated we do not respond directly to the first four errors assigned on behalf of defendants.

The fifth assignment is to the effect that the Chancellor erred in finding that the actions of defendants constituted a conspiracy on their part to obstruct the business of complainants. We have already disposed of this question and it is not necessary to further elaborate upon same at this time. The sixth assignment is to the effect that the Chancellor erred in finding that Local Union No. 4 made no objection to furnishing labor to Foster and Creighton Company for the work, and would have furnished same to complainant, except for the action of defendants. The specific objection to this finding does not appear, and it is difficult to see how it could be maintained in the light of the admitted facts of the case. In fact we do not understand that it is seriously denied that the actions of the representatives of Nashville Mason Contractors Association resulted in refusal of the local union to furnish the necessary labor for completion of the contracts by complainants. It is certain that this together with the collaboration between the members of the arbitration committee had this result, and it would be impossible to separate the two.

We have already disposed of the question sought to be raised by the seventh assignment, and same will not be further considered. And the same is true in connection with the eighth assignment. By the ninth assignment of error it is insisted that the Chancellor erred in awarding any compensatory damages, for the reason that the proof showed no damages resulted from any acts of defendants. We have concurred in the conclusions of the Chancellor that the acts of defendants hereinbefore outlined were unlawful; that they resulted in injury to complainants. The amount of damages resulting from said acts were fixed by the Master upon proof showing same, and the amount so fixed was approved by the Chancellor. This question was concluded by the concurrent finding of the Chancellor and the Master as to the amount of damages allowed in particular instances. Since we have concluded the question of liability, this assignment must be overruled.

The tenth and last error assigned on behalf of defendants is that the court erred in awarding punitive damages, for the reason that the proof showed the acts done by defendants to have been in good faith for the protection of their business and were without malice or intent to injure complainants. We think this assignment must be overruled. The actions of defendants could have had but one objective, the injury of complainants. Defendants had no purpose to service by their acts, except to prevent complainants from procuring labor, which they would otherwise have been

able to procure, for the completion of their contracts. It is insisted that their acts were designed to forestall what is termed as "chiseling." But this was an offense sometimes committed by general contractors. Complainants were not general contractors, and it is not even intimated that they had ever been guilty of the offense. In fact the only offense of which complainants were guilty, so far as this record discloses, in any way interfering with the interests of the defendants was that of obtaining the low bid on tile and brick work in Nashville. In this they ran counter to the Nashville Mason Contractors Association and its plans to limit the letting of contracts to local contractors only. That such was the design back of the original draft of the agreement with the Local Union of Brick Masons there can be no doubt, and that this design was sought to be effected even after the original draft of the contract had been rejected, we think there can be little doubt. In carrying out this design they violated the rights of complainants. For this reason we are not disposed to disturb the decree of the Chancellor in this respect. The allowance of punitive damages in a proper case is a matter largely within the discretion of the trial court, and will not be disturbed on appeal except in case of abuse of the discretion. Simpson v. Markwood, 6 Baxt., 340.

In this cause the defendants acted in concert to prevent complainants from procuring the services of labor to which they were legally entitled. Complainants were not members of or subject to the rules governing the conduct of members of the Nashville Mason Contractors Association. The rules of said Association were not of such character as to be binding upon non-members of same, and the attempt by the officials of said organization to force complainants to comply with their rules and regulations constituted an unlawful interference with their freedom to contract. These rules did not purport to apply to non-members of the Association, and defendants had no right to assume that they could force compliance by non-members. They rested upon the mutual consent of the parties in interest and could not apply to parties other than those so consenting. The question here is not one involving the right of labor to organize for the purpose of regulating the wages of its members and protecting them in their contracts. This right is established on a basis too sound to admit of question, but this does not mean that an independent oranization can use this right to further its interests, where no right of labor is involved. The progress of labor in its efforts to attain reasonable hours, proper working conditions and a fair wage has been slow. The progress made thus far should not be jeopardized by an attempt by designing individuals to use the progress thus gained to serve entirely separate interests. It results that all errors on behalf of defendants will be overruled.

The first error assigned on behalf of complainants is that the chancellor erred in dismissing the cause as to the Bush Building Corporation. It is insisted in this connection that all of the actions of W. Bush Sneed upon which he was held personally liable was done by him in his capacity as President of the Bush Building Company. It is true that this company was a member of the Nashville Mason Contractors Association, and it may be true that it profited, or was contemplated to profit, indirectly from the actins of its President. However, his ctions were not within the apparent scope of his position as President. There is no showing that his actions were authorized by the directing body of the corporation, or that they had any official sanction by any official of the corporation other than himself. In other words there is no showing of any direct connection between the acts of W. Bush Sneed and the affairs of the corporation, and we know of no reason why his acts should be imputed to the corporation. The fact that he was President of the corporation and that the corporation might have indirectly benefited from his acts would not of itself render the corporation liable. There is no showing that W. Bush Sneed was acting for the corporation while engaged in his wrongful acts, and we are not disposed to extend liability beyond that definitely shown. This assignment will be overruled.

The second error assigned on behalf of complainants is that the Chancellor improperly overruled complainants' first exception to the Master's report and failed to allow damages covering the cost of telegrams, etc., amounting to $246.97 and lost time amounting to $1,400. These two items are based upon the testimony of Mr. Lichter, which we think is not sufficient for granting a recovery of the amounts. Mr. Lichter filed a statement purporting to show his losses resulting from failure to get labor to perform his contracts. This statement contained the following statement:

| | | |
|---|---|---|
| "Traveling expenses due directly to take care of difficulties | | $ 246.97 |
| Value of time to take care of difficulties: | | |
| Mr. L.—13 days @ 100.00 | $1300.00 | |
| Mr. M.—2 " " 50.00 | 100.00 | 1400.00" |

Mr. Lichter was questioned about these items in a perfunctory manner only. For instance he simply says that he added traveling expenses of seven trips in an effort to adjust the labor controversy, but he makes no attempt to itemize these expenses or to show that same were reasonable charges. It may be, and we think it most probable, that they were entitled to a recovery of some of these items, but we are not willing to reserve the Chancellor on this character of proof. In attempting to justify the claim for loss of time, Mr. Lichter merely told how the figure could be arrived at

680

without showing that he actually lost that much time, and that his time was reasonably worth the amount claimed. He does not show that he lost thirteen full days on account of the labor trouble at Nashville. And we are not satisfied that his time on this particular job was worth the sum of $100 per day, on the showing of amount involved and the reasonable profit to be expected, in the light of all the circumstances. These items are not proven to the satisfaction of this court, and we think they were properly disallowed by the Chancellor and Master.

The third error assigned is based on the concurrent finding of the Master and Chancellor as to actual damages resulting from failure of complainants to get labor to do the Court House job. There is evidence to support this finding of the Master and concurred in by the Chancellor. This finding is conclusive in this court and will not be further considered.

The fourth error assigned is that the Chancellor deals with the question of amount of punitive damages allowed by the master. And the sixth error also deals with the same question, especially the action of the Chancellor in reducing the amount allowed by the Master. In cases tried by juries the question of allowing or denying exemplary damages is peculiarly one for the jury. And this rule applies where a party has wrongfullly interfered with the performance of a contract. Donnelly v. Jackson Bros., 2 Tenn. Civ. App., 408.

Where the case is tried before the Chancellor it is obvious that it is peculiarly within the discretion of the Chancellor as to how much, if any, punitive damages should be allowed. It is a matter of discretion which will not be interfered with by this court. We know of no fixed rule which could guide this or any other court in fixing the amount of exemplary damages to be awarded. And we know of no reason why we should substitute our judgment for the judgment of the Chancellor in this respect. The fact that we have the latter say in the matter offers no reason for altering the decree entered, and we are not inclined to do so. These two errors will be overruled.

It is next insisted that the Chancellor erred in overruling complainants' exception to the report of the Master relative to the refusal of the Master to allow treble damages to complainant under Code Section 7811. The provisions of the statute relied upon are as follows:

"It shall be unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of dam-

ages resulting from or incident to the breach of said contract; and the party injured by such breach may bring his suit for said breach and for such damages.'' Tenn., Code 1932, Sec. 7811.

We think the Chancellor properly held this section of the Code inapplicable to the facts in this case. We think the language of this statute does not contemplate a situation such as appears in this case, but rather the improper inducement of a person to a contract by means of which he is persuaded or prevailed upon to breach the contract entered into by him. Defendants did not induce or persuade any party to contracts involved in this case to breach such contracts, but on the contrary, they unlawfully induced members of the Local Mason Union to refuse to enter into contractual relations with complainants. The vice in their acts was in that they improperly influenced members of the union to refuse to work for complainants, not that they induced them to breach a contract already entered into. The remedy claimed in this connection is purely statutory, providing for an extreme penalty, and should not be enforced except upon a clear showing. We do not think it clearly apparent that complainants are entitled to collect the statutory penalty in this case, and the assignment of error will be overruled.

It results that all errors assigned on behalf of complainants will be overruled. The decree of the lower court will be affirmed. And the costs of the appeal will be equally divided.

Portrum and McAmis, JJ., concur.