## PRATT et al. v. DUCK.—191 S. W. (2d) 562.

Western Section. May 11, 1945.

Petition for Certiorari denied by Supreme Court, December 1, 1945.

504

John F. Hall, Roger Murray, and J. L. Harrington, all of Jackson, and E. C. Kennedy, of Decaturville, for plaintiffs in error.

L. L. Fonville and H. H. Waldrop, both of Jackson, and Max Bresler, of Memphis, for defendant in error.

ANDERSON, P. J. This was an action at law to recover damages for the wrongful death of the original plaintiff's intestate, a girl thirteen years of age, who was killed when a truck struck her as she walked along the highway. The vehicle was being driven at the time by J. S. Pratt, who was alleged to be the servant of Mrs. J. S. Pratt. Both were sued, the declaration averring both compensatory and punitive damages. The verdict was in favor of the plaintiff against both defendants jointly for $5000 compensatory damages, and against the defendant J. S. Pratt for an additional $5000 as punitive damages. On this verdict the judgment was entered and both defendants appealed in error.

The accident happened about 2:30 o'clock in the afternoon of November 30, 1943. The plaintiff's intestate and two companions about her own age were walking eastwardly on the South side of a hard surfaced public high-

way. The three children were walking abreast, the deceased being on the North. The child in the middle had her arms about the waists of the other two. The three were well to the right side of the road and as they proceeded down the highway the truck was approaching from their rear going East. One of the girls, hearing the truck approaching, looked back and saw that it was zigzagging and all three accordingly moved to the right, getting off of the hard surface and on to the shoulder. Apparently due to the zigzagging motion of the truck, the cab missed the children but the flat body struck the deceased in the back, hurled her through the air into a concrete ditch on the South side of the highway, causing injuries which resulted in her death.

Following the accident, the defendant Pratt did not stop the truck but proceeded through the town of Bemis which was in the immediate vicinity, crossing Highway 45 into which he ordinarily would have turned en route to his home, and proceeded on a gravel road a distance of some seven or eight miles. Upon resuming his journey after he had stopped at a country store for some purpose, he missed entirely a 12-foot bridge and drove the truck headlong into a ditch which it covered.

It is needless to further recount Pratt's activities other than to say that he did not get home at all that night and on the following day he was arrested and later convicted on a charge of manslaughter and sentenced to serve a term of five years in the State penitentiary. At the time of the trial of the present case he had begun serving that term.

There are formal assignments of error resting upon the contention that there is no evidence to support the verdict as to the defendant J. S. Pratt. These assignments are manifestly mere formalities. The evidence

was overwhelming to the effect that at the time of, and just prior to, the accident, Pratt was grossly drunk and was operating the truck with a reckless disregard of the rights of others on the highway. Indeed, due to his condition and the manner in which he was operating the powerful machine, he was a menace to everything in the vicinity.

It would be difficult to make a case which clamored more insistently for both compensatory and punitive damages than that presented to the jury. See Saunders v. Baxter, 53 Tenn. 369, 384; Railroad v. Ray, 101 Tenn. 1, 46 S. W. 554; Tel. & Tel. Co. v. Shaw, 102 Tenn. 313, 52 S. W. 163; Knoxville Traction Co. v. Lane, 103 Tenn. 376, 53 S W. 557, 46 L. R. A. 549.

There is some contention that when both the allowances for compensatory and for punitive damages are considered, the verdict is excessive. There is no merit in this contention. Upon the contrary, we think the jury was very lenient with the defendant due likely to the fact that he had been sentenced on the criminal charge.

But it is contended in effect that this sentence operated to bar the allowance of punitive damages. As to this question the decisions are not in accord. The weight of authority, however, is to the effect that the mere fact that the defendant has been punished criminally for the wrongful act upon which the civil action is based does not exempt him from liability for punitive damages. 15 Am. Jur. 711, Sec. 272; Notes 9 Ann. Cas. 639; 11 Ann. Cas. 1177; Ann. Cas. 1915B, 129; 28 Am. St. Rep. 882; 16 A. L. R. 798; 123 A. L. R. 1122. The cases so holding proceed upon the theory that whether exemplary damages are in their nature compensatory or punitive, they are not imposed as a substitute for punishment for crime but rather as enlarged damages for a civil wrong.

Basically the criminal proceeding is to punish the defendant for a past offense, whereas in cases of fraud, malice, gross negligence or oppression, the interest of society and of the aggrieved individual are blended and exemplary damages are allowed as an example or warning to the defendant and others as well to deter them from committing like offenses in the future. Louisville, Nashville & Great Southern Railroad Co. v. Guinan, 79 Tenn. 98; 15 Am. Jur. 700, 703.

We think the majority rule the sounder and accordingly adopt it.

■ ■ In this connection one other question may be noticed. It is well settled that under a statute authorizing a right of action by the personal representativ of a deceased person for the wrongful death of the latter, exemplary damages may not be recovered unless the statute expressly or by necessary implication so authorizes. The question therefore is one of statutory construction and it may be observed that the statutes of many States are construed to prevent the allowance in such cases of damages of that kind. 16 Am. Jur. 124, 125, 126. Our own statute on the subject is found in Code, Section 8236, providing in substance that the right of action which the deceased person would have had against the wrongdoer in case death had not resulted shall not abate or be extinguished by his death but shall pass to his widow, and in case there is no widow, to his children, or to his next of kin; or to his personal representative for the benefit of his widow or his next of kin. The language necessarily implies that exemplary damages may be recovered upon a proper state of facts; otherwise the right of action would not be the same as the deceased person would have had against the wrongdoer had his death not ensued from the wrongful act, and it

has been generally so regarded by the courts of this State. Union R. Co. v. Carter, 129 Tenn. 459, 166 S. W. 592; Haley v. Mobile & O. R. Co., 66 Tenn. 239; R. R. v. Daughtry, 88 Tenn. 721.

The theory of our decisions is that the statute providing the right of action is no less a survival than one for the protection of the designated beneficiaries. Carolina C. & O. R. R. v. Shewalter, 128 Tenn. 363, 161 S. W. 1136, L. R. A. 1916C, 964, Ann. Cas 1915C, 605; Union R. Co. v. Carter, supra.

The case against the defendant Mrs. Pratt was grounded solely upon the doctrine of respondeat superior, and it is contended that there was no evidence to warrant the conclusion that her husband was her servant acting within the scope of his employment with respect to the particular transaction.

Plaintiff showed that the truck which the defendant Pratt was driving at the time of the accident was registered in the name of Mrs. Pratt, and relied upon the statutory presumption thus raised as showing prima facie that the truck was being used on the business of Mrs. Pratt. This presumption operated to cast the burden upon the defendants of going forward with the evidence upon the issue, but it disappeared from the case upon the introduction of evidence showing the purpose for which the vehicle was being used, and is not available to support the verdict. Southern Motors Co. v. Morton, 25 Tenn. App. 204, 154 S. W. (2d) 801.

However, upon the evidence offered by the defendants no conclusion other than that reached by the jury was possible.

Pratt and his wife lived in Decatur County, in the town of Scotts Hill. Mrs. Pratt owned a cotton gin which was operated for her by her husband. On the morning

of the accident Pratt left Scotts Hill in the truck loaded with seven bales of cotton which he intended to deliver to a compress. Five of the bales belonged to the Pratt Gin Company, the name under which Mrs. Pratt operated, and two of them to one of the Gin Company's customers. The seven bales of cotton were duly delivered to the Federal Compress in Jackson, Madison County, Tennessee, and receipts taken for five bales in the name of the Pratt Gin Company, and for two bales in the name of the customer, Robert Austin. Pratt ran over and killed the child in Madison County, Tennessee, near the village of Bemis after he had delivered the cotton and while he was enroute to his home.

The evidence touching the duties of Pratt in connection with the operation of the gin was meager, but it was a fair inference that he was in full charge as superintendent or manager, having several employees under him. Mrs. Pratt was post mistress at Scotts Hill and devoted her time exclusively to that job. She performed no service in connection with the operation of the gin.

Much is said in the brief about the ownership of the truck. Pratt testified that he and his wife each owned a truck of the same type, and that the truck he' was driving at the time of the accident was his truck and not that of his wife. Under the facts of this case the ownership of the truck was not determinative of the issue. The undisputed evidence showed that, whoever owned the truck, it was customarily used on the business of the Pratt Gin Company in hauling cotton, and otherwise. The only possible conclusion was that such use was with the full knowledge and consent of Mrs. Pratt. Indeed, there was some evidence that warranted the conclusion that she had actual knowledge of the use being made of it on the particular occasion. Hence, upon the

question we are now considering it is immaterial whether the truck was owned by Pratt or Mrs. Pratt. Nat'l Life & Acc. Ins. Co. v. Morrison, 179 Tenn. 29, 162 S. W. (2d) 501, and cases cited.

But it is insisted that Pratt left Scotts Hill with the intention of taking the cotton to a compress in Henderson, Tennessee, and en route changed his mind and brought the cotton instead to the compress in Jackson; that this was a substantial deviation from his original mission; that the accident occurred in the progress of this deviation, and hence Mrs. Pratt cannot be liable under the doctrine of respondeat superior.

 In this behalf, the defendants apparently invoke the well-settled rule that where a servant deviates from his line of duty and engages in a mission of his own or for some third person, the master cannot be held under the rule of respondeat superior. Standard Tire & Battery Co. v. Sherrill, 170 Tenn. 418, 95 S. W. (2d) 915, and cases cited. This is undoubtedly the rule, but it is difficult to see how it can have any application to any view of the facts of the present case. One White, who also lived in Scotts Hill, left that town on the truck with Pratt. He testified that Mrs. Pratt thought they were going to take the cotton to the compress in Henderson and that they purposed to investigate the loss of a bale of cotton belonging to White that had been stored at that point by the Gin Co. for White and which apparently the former had paid the latter for. He said that before they reached Henderson he suggested to Pratt that if it made no difference to him he would like to go on to Jackson for the purpose of purchasing an overcoat and that Pratt assented.

 It was shown without dispute that the Pratt Gin Company stored its cotton about equally in the com-

presses at Henderson and Jackson. The considerations which determined whether it be stored in the one place or the other were not shown, but it was a fair inference that the matter was left to the judgment of Pratt in his capacity as manager of the Gin Company. Even if it were otherwise, and if taking the cotton to Jackson instead of to Henderson was a violation of Mrs. Pratt's instructions, it would avail the defendants nothing. This, for two reasons: First, because the master's liability does not cease merely because a servant is acting contrary to or even in defiance of express instructions from the master but only when the servant has abandoned and turned aside completely from the master's business to engage in some purpose wholly his own. Goff v. Coal Co., 174 Tenn. 558, 129 S. W. (2d) 205; Kennedy v. Union C. & C. Co., 156 Tenn. 666, 4 S. W. (2d) 354, 57 A. L. R. 733, 35 Am. Jur. 993, sec. 559. Here, there was no room for any view other than that in delivering the cotton to the compress in Jackson Pratt was acting within the scope of his implied or apparent authority, whatever Mrs. Pratt may have thought about his destination on the particular occasion. Hence she was liable for his conduct while so acting. Authorities supra. Indeed, it may be stated that Pratt testified that in leaving Jackson he was hurrying back to Scotts Hill because his services were needed at the gin.

With relation to a trip involving both the business of the employer and the private purpose of the employee, it has been said:

"The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. . . . If, however, the work has had no part in creating the necessity for travel, if

the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal." Per Cardozo, C. J., in Marks v. Gray, 251 N. Y. 90, 93, 167 N. E. 181, 183.

This statement of the rule is adopted in the revised edition of Shearman and Redfield on Negligence, Vol. 1, page 366.

The delivery of the cotton at Jackson was not a mere incident to Pratt's attempt to accommodate White. Upon the contrary, the accommodation of White can only be regarded as a mere incident of the primary purpose to store the cotton in a compress at that point. In making that delivery, Pratt was undoubtedly serving Mrs. Pratt, notwithstanding that he may have been incidentally accommodating his neighbor White in going on to Jackson instead of stopping at Henderson. Cf. Cunningham v. Union C. Co., 177 Tenn. 214, 147 S. W. (2d) 746, 148 S. W. (2d) 633.

The second reason is that all other questions aside, the jury were fully warranted in concluding that whatever Mrs. Pratt may have originally thought about Pratt's destination, she ratified his delivery of the cotton to Jackson rather than to Henderson. This she did by accepting without question the receipts issued by the compress at Jackson.

It is uniformly held that the ratification of an unauthorized act will make the principal liable for the negligence of the agent in doing the act. 35 Am. Jur. 997; Shearman and Redfield on Negligence, Revised Edition, Vol. 1, page 371.

Thus, it was held that a coal dealer who presents a bill and demands payment for coal ordered from him

but delivered by a third person without authority, so ratifies the act of the latter as to make him her servant and becomes liable for the value of a window broken by him in delivering the coal. Dempsey v. Chambers, 154 Mass. 330, 28 N. E. 279, 13 L. R. A. 219, 26 Am. St. Rep. 249. See also Nims v. Mt. Hermon School, 160 Mass. 177, 35 N. E. 776, 22 L. R. A. 364, 39 Am. St. Rep. 467. In this connection we may observe that Mrs. Pratt did not testify on the trial of this case and her failure to do so was in and of itself evidence interpreting and fortifying the other circumstances indicating that the delivery of the cotton at Jackson was authorized or ratified by her. Western Union Tel. Co. v. Lamb, 140 Tenn. 107, 203 S. W. 752; Nat'l Life & Acc. Ins. Co. v. Morrison, supra, 179 Tenn. 41, 162 S. W. (2d) 501.

It is further insisted that the accident occurred while Pratt was driving a route different from that which he had used on the journey to Jackson, and that this amounted to a deviation from the scope of his authority. The facts were that in going to Jackson Pratt entered that city on Highway 45 which is a concrete thoroughfare and the main route between Henderson and Jackson. In departing, he left Jackson by the Bolivar Road, intending to enter Highway 45 in the vicinity of the town of Bemis. The accident occurred on a cross road connecting the Bolivar Road with Highway 45. Questioned as to why he did not return by the same route he had gone to Jackson, Pratt testified that the traffic was much heavier on Highway 45 as it neared the city of Jackson and that not being an expert driver, he wished to avoid the congestion by going the less traveled route until he had gone some distance from the city limits. Moreover, he testified that in going to and from Jackson he customarily went by the Bolivar Road through Bemis; that

he had done so ''unnumbered times'' in order to avoid the heavy traffic on Highway 45 in the vicinity of the city limits. There was no evidence offered to show the difference in the distance, if any, and there was no room for the conclusion that in traveling the Bolivar Road there was such a deviation from the scope of his employment as the law contemplates. So far as appears, the route taken by Pratt in leaving Jackson was a practical and customary one for those having the same destination. The authorities upon the question which support our conclusion of this phase of the case will be found among those cited above.

There are a number of assignments of error based upon the refusal of the judge to give in his charge several special requests tendered by the defendants. These have been examined and we hold that insofar as they are accurate and applicable to the facts they were covered by the general charge.

It is assigned as error that the court, over the objection of the defendants, permitted the plaintiff to offer in evidence a certified copy of the deed conveying the cotton gin from the defendant Pratt to his wife Mrs. Pratt more than five years prior to the accident. The evidence was manifestly competent and moreover could not have affected the result since Pratt himself testified that his wife owned the gin and that he had conveyed it to her.

Errors are assigned on the admission of the testimony of the manager of the compress at Jackson to the effect that this record showed the delivery of the cotton. It is said the witness was shown to have had no personal knowledge of the transaction and was not familiar with the handwriting of Mr. Pratt who purported to sign the records from which the witness testified. The evidence

was immaterial. Pratt himself testified to all the record showed that was material.

Upon the whole case we find no reversible error in the record. Under any charge warranted by the evidence or any theory of the facts, we think the jury would not have been warranted in reaching any conclusion other than that which they did reach.

The result is the judgment is affirmed at the cost of the plaintiffs in error and their sureties.