# SUZORE v. RUTHERFORD.—251 S. W. (2d) 129.

Western Division at Jackson.   March 10, 1952.

Petition for Certiorari denied by Supreme Court, June 7, 1952.

McDonald, McDonald & Kuhn, of Memphis, for plaintiff in error.

Harry Jamerson and W E. Hendrix, both of Memphis, for defendant in error.

SWEPSTON, J.  James Rutherford sued the plaintiff-in-error, Fred Suzore for damages, both actual and punitive for willfully, maliciously and unlawfully shooting him.

Suzore plead self-defense.

The case was tried to a jury which rendered a verdict for $4,000 actual and $10,000 punitive damages.

The cause was tried at the March Term, and judgment entered on the verdict on April 19, 1951.  Defendant

seasonably filed his motion for a new trial on May 1, within the fifteen days allowed by the rules of the court, the same was submitted and was overruled July 5, which was in the succeeding May Term. On July 6 defendant filed an amended motion for a new trial setting up new grounds not covered in the original motion for a new trial. The Court overruled same ''with leave granted to the defendant to rely upon said amendment with supporting affidavits and to file said amendment in this cause.''

The assignments of error raise two questions (1) the verdict is so excessive as to show passion, prejudice or caprice, and (2) the alleged error of the Trial Court in overruling the amendment to the motion for a new trial based upon the alleged misconduct and bias of a juror.

As to the first question, it is not insisted that there is no evidence to support the verdict as to liability, but only that the evidence does not support such an alleged excessive amount.

A recital of the evidence favorable to plaintiff below is necessary to show what was before the jury. James Rutherford is a Negro farmer age 56, married and the father of nine children, the eldest being 28 years of age, and lives with his wife and family on a forty acre farm where they have lived the past 15 years, which farm he is buying, in the upper part of Shelby County near a small farm owned by defendant Suzore. He served 15 months in War I, one year of which was overseas.

Early on September 30, 1950, he was hunting squirrels on defendant's farm, which is posted, and about eight-thirty A. M. he had killed one squirrel and wounded another and was leaning against a bush watching for it when defendant, age 62, armed with a 16 gauge shot-gun and his younger companion, age 17, came upon him. ''Mr.

Suzore and Mr. Birchfield came from this direction, and when he hollered to me to drop the gun, I stooped over in this position to see who it was talking to me; I looked through the bush, you understand, to see who it was talking to me, and when I stooped over in this position, before I could straighten back up, Mr. Suzore shoots me; he says 'drop your gun', and before I could make out who he was, or which way the talk was coming from he shoots me; he shot me twice before I could even straighten back up, like I am now." They were about 30 yards from him and he had said nothing to Suzore before he was shot.

About 100 pellets entered his left wrist and arm, left leg and left side and abdomen and he fell to the ground. The other two men came up to him, Suzore kicked the gun away from him and told the young man to get him a heavy shell; that "If he even looks at me, I am going to shoot him right in the eyes".

. He further testified that he asked them to do something for him and not leave him there to die; that mosquitos covered his face; that these men did nothing to help him and Suzore took his hunting bag, squirrel and shells and left him. He lay there unconscious most of an hour and a half, until he regained a little strength. His left leg and arm were useless, but by means of a stick he dragged himself, using the stick as a crutch, about a half a mile to the road where he was soon picked up by a deputy sheriff who called an ambulance, and was taken to Kennedy Veterans Hospital where they had to perform an exploratory operation on his lower viscera to determine whether the shot had penetrated the intestines. There were shot in the viscera but no puncture of the intestine proper. He remained in the hospital 12 or 13 days and has had to return periodically for observation. Many

shot remain in his body and arm and leg. The hand and wrist still have some stiffness and damage to the cartilage of the wrist which could become arthritic. There is a possibility of adhesions causing a locked bowel in the future, which would necessitate another operation, although it may never occur.

He testified that he had not been able to do his farm work and that he lost about $3000 that he would have made by cutting and selling hay off the Millington Powder Plant field, where he had been getting the hay for several years.

Of course, the defendant's and Birchfield's version of the circumstances is at variance with plaintiff's but the jury has settled those conflicts in the evidence in favor of plaintiff and we are not permitted to pass judgment on which is the true picture.

Yet it seems patent that defendant's own statement could hardly have made a favorable impression on the jury, giving it full credence. He testified:

"Q. Well, take up at the point where you first saw the boy in this case and tell us what happened? A. When I first saw him we had been down to look under a hickory nut tree to see if the squirrels had been out there, and we didn't find any signs, and we started up a little ridge and when we got up to the top of the ridge I noticed this man standing and looking at me. And I says to this boy with me, 'There is a man hunting in here,', and he, at that time, turned and started walking away from me.

"I hollered at him four or five times and he kept walking, kept getting a little faster, and I said, 'Wait a minute, I want to talk to you.' So when he finally turned around, and as he did, he had his gun like this. And I says, 'What are you doing in here?' He

said, 'I am hunting squirrels.' 'Well' I says, 'this land is posted'. 'You are not supposed to be in here'. He said, 'I am still hunting squirrels.' 'Well' I said, 'at least you know you don't own this property'. And he never answered me. He backed back behind a tree and held his gun like that, not quite on me but toward me.

"I said, 'Put your gun down', He never answered me. I said, 'Put your gun down' and he still didn't answer me, kept holding his gun. And I shot over his gun and in front of him and as soon as I shot I said, 'If you don't put your gun down I am going to shoot you.' He still didn't and kept holding his gun. and that is when I tried to shoot it out of his hand."

As to actual damages we think the evidence amply supports the verdict independent of the claim that plaintiff lost as much as $3,000 on the hay.

The principal complaint is the punitive damages awarded are so beyond reason as to show bias or caprice.

In 25 C. J. S., Damages, Sec. 126, Page 739 et seq. after stating that there is no fixed standard of measurement and that the matter is largely in the discretion of the jury, assuming their action to be based on supporting evidence, it is said:

"In assessing the damages, the jury should take into consideration the attendant circumstances. So, particular matters which are to be considered are the nature of the case at bar, the nature or character of the act, the malice or wantonness of the act, the motive for the act, the manner in which it was committed, the injury intended or likely to result from a disregard of duty, the character and extent of the injury, and, according to some cases, the character of the parties, at least the character of de-

fendant. In short, as a general rule, material matters to be considered in determining the amount are what will be a proper punishment for the offending person, and the deterrent effect of the award on others.''

██ In Tennessee the rule is that the financial condition of the defendant, although not that of the plaintiff, is relevant, because what would be ''smart money'' to a poor man would not be, and would not serve as a deterrent, to a rich man. Herstein v. Kempker, 19 Tenn. App. 681, 711, 94 S. W. (2d) 76.

Mr. Suzore testified he owns property worth $100,000 and has a gross income from two picture shows and from rental properties of $65,000 to $70,000 annually,

Some jurisdictions hold there must be a reasonable ratio between the amounts of the actual and the punitive damages. 25 C. J. S., supra; 15 Am. Jur. 738, Section 296.

Yet an examination of the respective amounts allowed in those cases cited in the annotations reveal a much larger disparity than exists in the instant case of 2½ to 1.

For example, in Gordon v. McLearn, 123 Ark. 496, 185 S. W. 803 a verdict for malicious prosecution for $25 actual and $1000 punitive was reduced as to the latter to $200 or 8 to 1; Luther v. Shaw, 157 Wis. 234, 147 N. W. 18, 52 L. R. A., NS., 85. Damages for seduction of $150 actual and $5,000 punitive was reduced to $1,500 or 10 to 1.

██ We think the rule in this State is as stated in C. J. S. first quoted supra, that the punitive damages are to be fixed according to all the circumstances attendant upon the incident rather to the one fact of actual damages.

In Pratt v. Duck, 28 Tenn. App. 502, 191 S. W. (2d) 562, where a drunken truck driver, weaving the truck from side to side, struck and killed a thirteen year old girl, who was off the road and on the ditch bank, a verdict

of $5,000 actual and $5,000 punitive damage was upheld, with comment by Judge Anderson that the jury was probably lenient in regard to punitive damages because it appeared the driver had been sentenced to 5 years imprisonment on the criminal charge.

■ We think the conduct of Mr. Suzore according to his own testimony evidences a wilful and gross disregard for human life and limb, when he himself was armed, virtually arrested the plaintiff who was walking away from him, and then attempted to surpass William Tell by using a shot-gun, instead of an arrow, to shoot the plaintiff's gun from his hand. The absurdity of such a performance is attested by the numerous pellets in the torso and appendages of the victim.

We find no fault with the amount of punitive damages awarded and the assignment is overruled.

As to the other complaint, it was sought to show on the amended motion for a new trial filed July 6, 1951, by three affidavits that one juror had answered falsely on the voir dire that he did not know Mr. Suzore, whereas, some time after the trial it developed in conversation with those affiants that he did know him and that the juror's uncle had had a difficulty with Mr. Suzore about hunting on the farm.

We do not think, however, that we can reach the point of this assignment.

■ ■ When the amended motion for a new trial was filed, the term of court at which the judgment was entered had expired, that is, the March Term had expired. A judgment becomes final upon either the lapse of 30 days or the end of the term, whichever first happens, but a motion for a new trial seasonably filed suspends the judgment for the purpose of disposing of the motion only; it does not, however, suspend the judgment for all purposes.

Such a motion seasonably filed may be disposed of after 30 days or after the end of the term, but, if it be disposed of after the expiration of either period, the trial judge has no further jurisdiction over the case, if he overrules the motion, except as to allowance and perfection of appeal.

The foregoing simply abstracts and paraphrases the excellent discussion by Judge Howell in the case of Schulman v. Ridley, et ux., 29 Tenn. App. 503, 508-509, 197 S. W. (2d) 895, in which the authorities are cited and quoted.

We are therefore of opinion that the trial judge in the instant case having overruled the original motion for a new trial at a subsequent term, the May Term, to wit, July 5, had no jurisdiction to allow an amendment to the motion for a new trial on July 6. Everett, 1 Tenn. App. 85, 90.

We, therefore, cannot consider the matters arising on this assignment and the same is accordingly overruled.

A judgment will be entered here for $14,000 with interest from July 5, 1951 and costs.

Anderson, P. J., and Baptist, J., concur.