COPPINGER COLOR LAB, INC., Majestic Color Studios, Inc., and Polykraft Corporation, and Florence M. Gordon, Plaintiffs-Appellees,

v.

Gene M. NIXON, Defendant-Appellant.

Supreme Court of Tennessee, at Knoxville.

Oct. 15, 1985.

Scott N. Brown, Jr., Steven F. Dobson, Chattanooga, for Corporate plaintiffs-appellees.

James F. Logan, Cleveland, for plaintiff Gordon.

W. Neil Thomas, Jr., Chattanooga, for defendant-appellant.

## OPINION

BROCK, Justice.

The defendant Nixon purchased the old Church of God Tabernacle building in Cleveland, Tennessee, for $55,000.00 and immediately obtained fire insurance in the amount of $300,000.00 on the same. The evidence indicates that five days later defendant Nixon hired Vance Dobbins and Bruce Dobbins to burn the building down in order that he could collect the fire insurance. Dobbins and Dobbins, the arsonists, were apprehended shortly after the fire was ignited, in the night time, and Bruce Dobbins testified as a witness against defendant Nixon at this trial.

The corporate plaintiffs, Coppinger Color, Inc., Majestic Color Labs, Inc., and Polykraft Corporation, at the time of the fire, occupied the Tabernacle building as a tenant, using the same as a warehouse; plaintiff Florence M. Gordon owned a dwelling house and lot located just across an alley from the Tabernacle building. Both the Gordon residence and the Tabernacle building were consumed by the fire set by the Dobbins and plaintiffs brought these actions against Nixon seeking both compensatory and punitive damages. The actions were consolidated by the trial court and have been tried together both in that court and in the Court of Appeals.

The trial jury awarded the corporate plaintiffs a verdict of $50,000.00 compensatory damages and $100,000.00 punitive damages; the jury awarded to plaintiff Gordon compensatory damages of $53,-000.00 and punitive damages of $450,-000.00. These awards were approved by the trial court and by the Court of Appeals. We granted discretionary review to consider issues respecting the punitive damage awards.

First, the defendant Nixon argues that one who is subject to criminal sanctions for an act should not also be subject to and have punitive damages awarded against him for the same act. Counsel for the defendant has put forth appealing arguments to support his position, but we are not disposed to depart from the rule in this state, *Pratt v. Duck*, 28 Tenn.App. 502, 191 S.W.2d 562 (1945), and in many others, *see* 22 Am.Jur.2d 338 *Damages* Section 246 (1965), which permits recovery of punitive damages based upon a wrongful act which may be or has been punished criminally. We approve the observation made by Judge Anderson in *Pratt v. Duck, supra:*

"The cases so holding proceed upon the theory that whether exemplary damages are in their nature compensatory or punitive, they are not imposed as a substitute for punishment for crime but rather as enlarged damages for a civil wrong. Basically the criminal proceeding is to punish the defendant for a past offense, whereas in cases of fraud, malice, gross negligence or oppression, the interest of society and of the aggrieved individual are blended and exemplary damages are allowed as an example or warning to the defendant and others as well to deter

them from committing like offenses in the future. (Citation omitted.)"

191 S.W.2d at 564–5.

*See, also,* 22 Am.Jur.2d 338, *Damages,* Section 246 (1965).

We adhere to the rule stated in *Pratt v. Duck, supra.*

We will consider together the defendant's arguments that (1) the punitive damage award to the plaintiff Gordon is excessive and (2) that since the purpose of awarding punitive damages is to punish the defendant and to make an example of him there is no justification for awarding $450,000.00 punitive damages to Ms. Gordon while awarding to the corporate plaintiffs only $100,000.00 punitive damages.

The defendant insists that both the alleged excessiveness of the Gordon award and the discrepancy between it and the award of punitive damages to the corporate plaintiffs is explained by the fact that the witness Dobbins testified that immediately prior to the fire he asked defendant Nixon whether anyone lived in the Gordon home and that Nixon replied that it didn't make any difference because "... it's just niggers." We cannot agree; to reach that conclusion from the record would be an exercise in pure conjecture.

 Whether or not punitive damages are to be awarded at all and, if so, the proper amount of such damages, is pre-eminently for the jury to decide; but the discretion of the jury in fixing the amount of punitive damages is not beyond supervision by the Court. *Lichter v. Fulcher,* 22 Tenn. App. 670, 125 S.W.2d 501 (1938). The amount to be awarded as punishment in a civil action must depend upon all of the circumstances. *Loope v. Goodings Million Dollar Midways, Inc.,* Tenn., 553 S.W.2d 573, 575 (1977). Punitive damages should be "... fixed according to all of the circumstances attendant upon the incident rather than to the one fact of actual damages." *Suzore v. Rutherford,* 35 Tenn.App. 678, 251 S.W.2d 129 at 131 (1952). "Such damages are not based so much upon the nature and extent of the injury as they are upon the oppression of the party who does

the injury. (Citations omitted.)" *Lazenby v. Universal Underwriters Ins. Co.,* 214 Tenn. 639, 383 S.W.2d 1 at 4 (1964).

"Evidence concerning the financial condition of the defendant is essential in determining the amount of punitive damages. The damages which would operate as a proper punishment to one person might be inadequate to that effect upon another, by reason of their difference in pecuniary conditions; and on the contrary, a verdict that would be scarcely regarded by a wealthy person might be ruinous to a poor one.... An award of exemplary damages lies within the discretion of the trier of fact, although Tennessee practice requires separate itemization and reporting of punitive damages, distinct from compensatory damages, and punitive damages are to be fixed according to all circumstances attendant rather than upon the one fact of their ratio to actual damages."

9 *Tennessee Jurisprudence* 68, 69, Damages, Section 34.

The evidence in the instant case indicates that the defendant was a man of considerable wealth and that he had extensive holdings of real estate and other investments, but his net worth is not clearly shown. We note that the defendant did not himself offer evidence relating to the value of his estate.

The plaintiff Gordon justifies the discrepancy in the amount of punitive damages awarded to her and those awarded to the corporate plaintiffs on the ground that, whereas the defendant could foresee that the fire would result in only property damage to those plaintiffs, he could foresee the threat of injury or death of Mrs. Gordon and others in her household if the fire should engulf her home, as it did. Moreover, she argues that the intentional burning of a person's personal residence is much more reprehensible than the burning of a property used only for commercial purposes. We agree; the facts of this case disclose a reasonable ground for the jury to assess a greater amount of punitive dam-

ages for plaintiff Gordon than for the corporate plaintiffs.

The defendant's act was more egregious toward Mrs. Gordon than toward the other plaintiffs. Mrs. Gordon lost all of her personal belongings and was lucky to escape death, a fact of which the defendant was aware. The tenant was a corporation and lost only inventory and supplies. There was no expectation of the loss of a life with regard to the tenant corporation. Thus, the enormity of the act was far greater toward the resident than toward the corporate plaintiffs.

Admittedly, it is difficult to lay down a rule for testing the excessiveness of a verdict for punitive damages; however, such an award will be set aside if it is grossly excessive or appears to be the result of passion, prejudice, improper sympathy, or for some other reason appears to constitute an injustice. 22 Am.Jur.2d 360–361, *Damages*, Section 266 (1965). The factors to be considered in assessing the award include the nature of the defendant's acts, the amount of compensatory damages awarded and the wealth of the particular defendant. The more reprehensible the act, the greater the appropriate award of punitive damages. We conclude that the oppressiveness of the defendant's act justifies the amount of punitive damages awarded by the jury and that that award should not be presumed to have resulted from the racial slur attributed to him by his hired arsonist, Dobbins. There simply is no evidence in the case to justify that theory.

"No mathematical formula will adequately balance the conflicting pulls which arise from the totality of circumstances. However, as unsatisfactory as an imprecise rule may be to those who seek precision, there is perhaps no better rule than that of leavng the amount of punitive damages to the sound discretion of the jury, leaving judicial intervention to those cases in which the punitive damages allowed are so disproportionate as to manifest that they were awarded as a result of passion and prejudice."

*Damages and Recovery*, Stein, 1972, Section 196.

We approve the verdict of the jury.

We have considered other issues presented but find no reason to modify the judgments of the trial court and the Court of Appeals. Therefore, we affirm the judgment of the Court of Appeals and of the trial court. All costs incurred upon appeal are assessed against the defendant and surety.

COOPER, C.J., and HARBISON and DROWOTA, JJ., concur.

FONES, J., files separate opinion concurring in part and dissenting in part.

FONES, Justice, concurring in part and dissenting in part.

I concur with the majority opinion in all respects, except the approval of the award of $450,000 punitive damages to plaintiff Florence M. Gordon.

I agree that there was a valid reason for an award of punitive damages to Ms. Gordon, substantially in excess of the award to the corporate plaintiffs. However, in my opinion an award to Ms. Gordon of three times the amount awarded the corporate plaintiffs is the absolute upper limit of the range of reasonableness for a punitive damage award under the facts and circumstances of this case.

I therefore find that award of punitive damages to be excessive and I would reduce it from $450,000 to $300,000. *See Smith v. Shelton*, 569 S.W.2d 421 (Tenn. 1978) wherein we adopted Justice Swepston's dissent in *Lambert Brothers v. Larkins*, 200 Tenn. 674, 296 S.W.2d 353 (1955) thereby authorizing this Court to reduce jury verdicts upon a defendant's appeal, and further to reduce an award approved by both lower courts, where there is no material evidence to sustain it. I find no material evidence to sustain this punitive damage award in excess of $300,000.