Virginia H. DODSON, et al.,
Plaintiffs-Appellees,

v.

Frederick A. ANDERSON, et al.,
Defendants-Appellants.

Supreme Court of Tennessee,
at Knoxville.

April 21, 1986.

Opinion on Petition to Rehear
May 27, 1986.

James W. Gentry, Michael W. Boehm, Mattson D. Lewis, Gentry & Boehm, Chattanooga, for defendants-appellants.

Scott N. Brown, Jr., Anita B. Hardeman, Brown, Dobson, Burnette & Kresler, Chattanooga, for plaintiffs-appellees.

OPINION

FONES, Justice.

Plaintiff Virginia Dodson, individually and as Virginia H. Dodson, Inc., initiated this action in the Hamilton County Chancery Court, alleging that defendant Frederick A. Anderson induced her to purchase certain assets of the Anderson Photo Corporation by means of various fraudulent misrepresentations and concealments. Plaintiff further alleged that defendant Frederick Anderson breached the sale and

purchase agreement by failing to provide effective consultation and by refusing to disclose pertinent confidential information, trade secrets, and "know-how." Plaintiff subsequently amended her complaint to name as an additional defendant Barbara R. Anderson, director and secretary-treasurer of the Anderson Photo Corporation and wife of defendant Frederick Anderson. Plaintiff averred that Mrs. Anderson's participation in the alleged concealments and scheme to defraud and her failure to provide valuable training and advice as promised rendered her jointly and severally liable for plaintiff's losses.

The chancellor determined that defendants were guilty of fraud and breach of contract, and awarded plaintiff compensatory damages in the amount of $222,665.35 and punitive damages in the sum of $150,-000.00. The Court of Appeals reduced the punitive damage award to $25,000.00, but otherwise affirmed the judgment.

We granted defendants' Rule 11 application for permission to appeal solely to determine whether the courts below erred in holding defendant Barbara Anderson liable for the fraudulent actions of Frederick Anderson.

In early December, 1982, plaintiff contacted Mr. Anderson to explore the possibility of purchasing his photography business, the Anderson Photo Corporation. Plaintiff and Mr. Anderson, along with their respective attorneys and accountants, entered into negotiations and reached an agreement embodied by a document executed on December 31, 1982, which provided that plaintiff was to purchase for a consideration of $160,000.00 essentially all of the company's assets, including equipment, fixtures, furniture, automobiles, supplies, leasehold improvements, accounts receivable, contract rights, inventory, trade secrets and confidential information, as well as the name "Anderson Photo." In addition, plaintiff agreed to lease an airplane used in the business, and Mr. Anderson agreed to provide consulting services and not to compete with plaintiff for a limited time within specified geographic areas. The sale was closed on February 1, 1983.

The chancellor found and the Court of Appeals concurred that Mr. Anderson had concealed the actual condition of the business and misrepresented its earnings, the number and quality of employees who would aid plaintiff in her operation of the business, and the uniqueness of a particular marketing technique which utilized "box drawings."

Mrs. Anderson's intimate involvement in the affairs of the Anderson Photo Corporation is well documented by the record before us. Prior to plaintiff's purchase, Mrs. Anderson served as corporate director and secretary-treasurer and was deemed to be the company's "second in command." She took an active managerial role in the day-to-day operation of the business as bookkeeper and overseer of the office staff. She handled large sums of cash on a daily basis and wrote checks on the corporate account. Mrs. Anderson was present during portions of meetings at which plaintiff and Mr. Anderson discussed the condition of the business and negotiated the terms of sale, and she provided the financial information relied upon by plaintiff and plaintiff's accountant. Although Mrs. Anderson was not a party to the sale, she signed both the initial December 31, 1982 agreement and the subsequent February 1, 1983 closing document as a witness. Mrs. Anderson testified that she had read both documents and that she was familiar with the terms of the sale. Mrs. Anderson further testified that she knew, but did not inform plaintiff, that the company had lost several key employees just prior to the time plaintiff and Mr. Anderson entered into negotiations.

The record also reveals that Mrs. Anderson reaped substantial benefits from the sale. The proceeds of the sale were initially deposited into the Anderson Photo corporate checking account at Commerce Union Bank in Chattanooga. Soon thereafter, both Mr. and Mrs. Anderson wrote a series of large checks on the account transferring the bulk of the funds to Merrill, Lynch, Pierce, Fenner & Smith, Inc. and Charles

Schwab & Co., Inc. for deposit in personal investment accounts bearing the names of Fred A. Anderson and Barbara R. Anderson as joint tenants. Mr. Anderson testified that prior to the sale it was his intent to use the proceeds to set up a new business, and, in fact, shortly after the sale of assets to plaintiff, Mr. and Mrs. Anderson, in their respective capacities as president and secretary-treasurer, resumed the operation of their "box drawing" photography business under the name of Olympic Studios, Inc.

As a result of the sale, Mrs. Anderson also received the benefit of a short-term employment contract. In an attempt to assure that the company's on-going business operations would not suffer any undue disruption during an agreed-upon "transitional period" in which plaintiff was gradually to assume complete control of the enterprise, plaintiff not only contracted for Mr. Anderson's consulting services at the rate of $2,000.00 per week, she also hired Mrs. Anderson at the rate of $500.00 per week to train a new bookkeeper and office manager. It seems, however, that Mrs. Anderson utilized the three-week term of her employment after the closing largely to remove essential business and payroll records from the office.

Shortly after plaintiff took over the management of the business, Mr. Anderson, apparently feeling that he had not received all that he was due, gained access to the company's post office box and removed, by his own estimate, $3,063.00 in money orders addressed to Anderson Photo. Although the funds taken by Mr. Anderson were paid into court, presumably in full, upon the filing of the lawsuit, Mrs. Anderson conceded that she initially acquiesced in her husband's theft.

Upon the foregoing facts, the chancellor imputed Mr. Anderson's fraudulent misrepresentations and concealments to Mrs. Anderson, whom he characterized as a "silent partner" who continued to enjoy the benefits of the ill-gotten gain. The chancellor found that Mrs. Anderson "well knew" throughout the entire transaction that her husband was leading plaintiff to a "financial slaughter." The Court of Appeals determined that "the circumstances established Barbara Anderson's liability as determined by the Chancellor."

■ We are of the opinion that the marital relationship alone does not render one spouse liable for the fraudulent actions of the other. *Cf. Hammond v. Herbert Hood Co.*, 31 Tenn.App. 683, 221 S.W.2d 98 (1948) (cert. denied May 6, 1949) (marital relationship alone does not supply evidence of a principal and agency relationship), *see generally* 41 Am.Jur.2d *Husband & Wife* § 436 (1968). A spouse may, however, ratify the fraudulent act of the other so as to become liable for the fraud itself by accepting or retaining the benefits of the act knowing it was tainted with fraud. *Lyons v. Jones*, 22 Tenn.App. 262, 121 S.W.2d 125 (1938) (cert. denied Oct. 22, 1938), *cf. Pratt v. Duck*, 28 Tenn.App. 502, 191 S.W.2d 562, 567 (1945) (cert. denied Dec. 1, 1945) (principal held to have ratified unauthorized act of agent by acceptance of receipts without question), *see generally* Annot., 82 A.L. R.3d 625 (1978).

In *Lyons v. Jones, supra,* a husband and wife executed a note contemplating a legal interest rate of 6%. Subsequently, the payee, in the presence and with the consent of the husband, altered the note so as to reflect a usurious interest rate of 8%. The husband obtained the money on the altered instrument and expended it to improve the joint property of the husband and wife. The wife, who knew nothing of the alteration initially, argued that the note was voided as to her as the result of a material unauthorized alteration. The court disagreed, however, and held, "[the wife] cannot deny the agency of the husband and reap the profit of the transaction; when she retains the benefit she ratifies the acts of her husband as her agent after knowledge of the alteration." 22 Tenn.App. at 269, 121 S.W.2d at 129. We find the court's ruling in *Lyons* to be sound and clearly applicable to the case at bar.

■ We disagree with defendants' contention that the record is devoid of evi-

dence demonstrating that Mrs. Anderson possessed any knowledge of the fraud perpetrated by her husband. It is well settled that any fact may be proved by either direct or circumstantial evidence, *City of Columbia v. C.F.W. Construction Co.*, 557 S.W.2d 734, 740 (Tenn.1977), and we note that circumstantial evidence is particularly cogent in cases involving fraud. *Gibson's Suits in Chancery* § 195 (Inman 6th ed. 1982). *Cf. Seago v. Martin*, 53 Tenn. (6 Heisk.) 308, 310 (1871) (slight circumstances sufficient to raise presumption of ratification).

We likewise reject the defendants' contention that Mrs. Anderson should be exonerated from liability for punitive damages. Certainly, punitive damages are allowable in cases involving fraud. *Bland v. Smith*, 197 Tenn. 683, 277 S.W.2d 377 (1955), *Hutchison v. Pyburn*, 567 S.W.2d 762 (Tenn.App.1977). It is equally clear that punitive damages may be awarded against a principal whose liability arises from the acts of an agent. *Huckeby v. Spangler*, 563 S.W.2d 555 (Tenn.1978), *State v. Hartford Accident & Indem. Co.*, 44 Tenn.App. 405, 314 S.W.2d 161 (1958) (cert. denied June 6, 1958).

We are of the opinion, however, that Mrs. Anderson's liability is not predicated solely upon the acts of her husband so as to be "technical or vicarious only." *Price v. Clapp*, 119 Tenn. 425, 105 S.W. 864 (1907). Mrs. Anderson is, rather, answerable for her own misconduct. Throughout the entire transaction, Mrs. Anderson was fully aware of the declining condition of Anderson Photo. She possessed the guilty knowledge that the sale was permeated with her husband's fraud, and she acquiesced in, sanctioned, and profited from his activities. The trial record provides adequate evidentiary support for the chancellor's finding that Mrs. Anderson's role was that of an active and willing, albeit, silent participant. It follows that the facts of the instant case amply warrant the imposition of punitive damages against her.

The decision of the Court of Appeals is affirmed. The costs of this appeal are assessed against defendant.

BROCK, C.J., COOPER and HARBISON, JJ., and BYERS, Special Judge, concur.

## OPINION ON PETITION TO REHEAR

FONES, Justice.

Petition to rehear has been filed on behalf of appellant, Barbara R. Anderson, questioning the grounds upon which this Court held her liable for certain fraudulent misrepresentations and concealments.

The petition seeks to reiterate appellants original position and to re-argue matters which counsel insists were improperly decided. It raises substantially the same issue heretofore fully considered and discloses no material fact or proposition of law overlooked or misapprehended by this Court upon which the parties have not been heard.

The petition to rehear is accordingly overruled at the cost of appellant.

BROCK, C.J., COOPER and HARBISON, JJ., and BYERS, Special Judge, concur.